ORIGINAL

RECEIVED IN PRO SE OFFICE
APR 26 2022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

DANIEL N. ARBEENY, as the Administrator
of the Estate of NORMAN ARBEENY (Deceased),
individually and on behalf of all others similarly situated,

Plaintiff

vs.

Andrew M. Cuomo,

The State of New York,

Melissa DeRosa,

Howard A. Zucker, M.D.,

Defendants

CV 22-2336

DeARCY HALL, J.

BLOOM, M.J.

Civil Action No. _____

## COMPLAINT

### Jury Demand

1. This action seeks monetary and other damages against the Governor of the State of New York, the State of New York, other public officials of the State of New York in the wrongful deprivation of the life of Norman Arbeeny without due process of law. This occurred as a direct consequence of the willful and negligent promulgation of an Executive Directive issued on March 25, 2020 requiring New York State nursing homes to admit any patient into an elderly population without prior testing for COVID-19. Plaintiff alleges that all of the Defendants acted under color of state law in violation of Plaintiff's rights under the Fourteenth Amendment to the Constitution of the United States and in violation of the Federal Claims Act.

2. Plaintiff brings this action pursuant to Rule 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a class of all other persons similarly situated, and on behalf, in part, of the government of the United States.

### Jurisdiction

3. This Court has jurisdiction over Plaintiff's federal claim under 42 U.S.C. § 1983 and the Fourteenth Amendments to the United States Constitution. The Court has supplemental jurisdiction over Plaintiff's second claim, which is based on state law, under 28 U.S.C. § 1367.

4. Venue in the United States District Court for the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391.

## Class Action Allegations

5. The named Plaintiff seeks to represent a certified plaintiff class consisting of all individuals whose immediate family members died of COVID-19 contracted as a consequence of actions by the Defendants.

6. The members of this class are too numerous to be joined in one action. On information and belief, there are an estimated fifteen thousand (15,000) residents of the State of New York who died of COVID-19 contracted in nursing homes in the State of New York as a consequence of the March 25 Executive Directive (Directive). The number of their heirs and other close family members run in the hundreds of thousands.

7. The class members share a number of common questions of law and fact, including but not limited to whether the conduct of the Defendants represents a deprivation of the rights guaranteed to the class members by the Constitutions of the United States and of the State of New York, as well as other federal, state and local laws.

8. The claims of the named Plaintiff are typical of those of members of the class to be represented.

9. The legal theories under which the named Plaintiff is seeking relief are the same or similar to those on which all members of the class will rely, and the damages suffered are likewise common to the class at large.

10. The named Plaintiff has been singularly identified through press interviews and television appearances as having strong personal interest in the outcome of this action

11. The named Plaintiff has no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class.

12. That the named Plaintiff is seeking compensatory and punitive damages on an individual basis strengthens the adequacy of his representation of the class.

## Parties

13. Decedent Norman Arbeeny was a citizen of New York State and resided at 128 Amity Street, Brooklyn, New York, 11201.

14. The named Plaintiff is Daniel N. Arbeeny acting as the Administrator of the Estate of the Decedent and resides at 124 Amity Street, Brooklyn, New York, 11021.

15. Defendant No. 1, Andrew M. Cuomo, is the Governor of the State of New York whose principal office is the New York State Capitol Building, Albany, NY 12224. Defendant Cuomo, acted in concert with the other Defendant public officials herein named, caused the wrongful death of Norman Arbeeny.

16. Defendant No. 2 is the State of New York at an address identical to that specified in Paragraph immediately above.

17. Defendant No. 3, Melissa DeRosa, is the Secretary (Chief of Staff) to the Governor of New York.

18. Defendant No. 4, Howard A. Zucker, M.D., is the Commissioner of Health of the State of New York.

## Allegations of Facts

19. Decedent was born on March 15, 1931.

20. Decedent was an employee of All HVAC company up until the time of this death at approximately 4:00 a.m., April 21, 2020.

21. Prior to one month before his death, Decedent had no life-threatening ailments or diseases, but did require in-residence treatment for periods of time in a nursing home.

22. On March 20, 2020, Decedent was admitted to Cobble Hill Health Center (CHHC) for conditions relating to difficulty in walking. This facility is located at 380 Henry Street, Brooklyn, NY, 11201, which is in close proximity to the Arbeenys' homes.

23. At time of his admission, Decedent had not incurred COVID-19 and had no symptoms thereof.

24. Citing the "urgent need to expand hospital capacity," Defendant Cuomo issued a Directive to the State's nursing homes on March 25, 2020, (Directive) that no person could be "denied re-admission or admission to the NH solely based on a confirmed or suspected diagnosis of COVID-19" and that "NHs are prohibited from requiring a hospitalized resident who is determined medically stable to be tested for COVID-19 prior to admission or readmission."

25. There were no nursing homes in NYS that were equipped to handle an airborne, highly contagious and deadly virus which Defendant knew or should have known.

26. Seniors are the population most vulnerable to coronavirus and coronavirus death in the U.S.

27. The Directive was promulgated without conformance with the State Administrative Procedure Act and without any factual, medical or other scientific evidence.

28. Five days after Defendant Cuomo signed the Directive, the USS Comfort and the Javits Center converted to a hospital came online giving New York City and the surrounding area an additional 2,000 hospital beds. Through other regulatory actions, Defendants Cuomo and other New York State Health Officials rendered it near impossible those facilities to be available for COVID-19 patients.

29. Six days after Defendant Cuomo signed the Directive, the Samaritans Purse field hospital in Central Park opened with 68 beds available for COVID patients. Again, for reasons unstated and unfounded, Defendant Cuomo and other New York State Health Officials also refused to use this facility for COVID-19 patients.

30. CHCC informed Plaintiff and other family members about the requirement of the Directive and that they were trying to persuade the office of the Governor and other State Defendant and other parties as to the medical unsoundness forcing them to take patients without COVID testing.

31. Plaintiff and other similarly situated individuals and families with parents, in-laws or other relatives in the State's nursing homes immediately initiated efforts to have the Directive reconsidered and repealed.

32. Defendants Cuomo and other State Health Officials ignored the written and oral pleas of these family members to repeal the Directive.

33. When Defendants persisted with the implementation of the Directive, New York State nursing homes complied with the admission of new patients without testing them for infection with COVID-19.

34. During this period, there was, by definition, no differentiation between and among nursing home occupants on the basis of whether or not they may have been infected with COVID-19.

35. This policy of mandatory admission, non-testing and comingling of nursing home residents constituted reckless endangerment by all of the Defendants.

36. Despite the best efforts of his family members to remove him from CHHC, Decedent's medical requirements delayed his release until April 8, 2020.

37. During the period of Decedent's stay at CHHC subsequent to the Directive and prior to his release on April 8, Decedent developed a low-grade fever.

38. Despite 24-hour home nursing care at his home after his release from CHCC on April 8, 2020 and without leaving his home after his release from the nursing home, Decedent's symptoms developed into significant upper congestion and his doctor ordered a COVID test to be administered.

39. During this time period, no family member, attending healthcare staff or any other person coming in contact with the Decedent was COVID-19 infected.

40. Decedent was tested at home at 1:00 p.m. on April 20, 2021.

41. Decedent's life ended at approximately 04:00, April 21, 2020.

42. Later in that day and eight hours after his death, Decedent's COVID-19 test came back positive on April 21, 2021.

43. The death of Norman Arbeeny was never counted as a death by COVID under the fraudulent COVID-19 mortality data collection procedures established and operated through the willful conduct all Defendants.

44. Plaintiff and other similarly situated individuals began organizing an opposition campaign to both the Directive and Defendants' fraudulent data collection and reporting system.

45. Defendant Cuomo publicly ridiculed individuals such as the Plaintiff characterizing their views as "conspiracy theories" and "politically motivated."

46. Media attention began to focus on CHHC because it was accurately reporting higher levels of COVID deaths as opposed to participating in the fraud being perpetrated by all Defendants acting individually and collectively.

47. These reporters interviewed the Plaintiff who made it clear that the Directive was wreaking havoc in nursing homes and contributing to the rising number of COVID-19 deaths.

48. Also at this time, the New York State Legislature began consideration of legislation (A10840 and S8835) to grant any health care facility and health care staff immunity from civil or criminal liability for any harm or damages alleged to have been sustained providing health care services to COVID-19 patients.

49. On July 6, 2020,[1] The New York DOH issued a report stating that approximately 6,326 COVID-positive residents were admitted to nursing home facilities between March 25, 2020 and May 8, 2020 and that there had been 6,432 COVID-19 resident deaths in New York state nursing homes through late June.

50. Nevertheless and contrary to the views of independent medical authorities, the DOH report and the Defendants continued to deny the obvious causal connection between these two occurrences.

51. On August 3, 2020, Defendant Cuomo signed the immunity legislation in law (§§ 3080 – 3082 of Article 30-d of the Public Health Law Relating to the Emergency or Disaster Treatment Protection Act).

52. Throughout this period, Plaintiff and his brother Peter Arbeeny continued to speak with many of the television and newspaper reporters covering COVID-19 developments including NYC News1, CNN, CBS, ABC, WSJ, Fox, AP, and many others.

---

[1] Revised Feb. 11, 2021.

53. During over 50 interviews, including one conducted by Jake Tapper on CNN, Plaintiff specifically disputed Defendant Cuomo's constantly repeated statement that by mid-summer New York had only incurred 6,500 COVID-19 deaths.

54. During these interviews, Plaintiff also regularly contradicted Defendant Cuomo's repeated statement that those nursing home deaths which did occur were due to the spread of infections caused by nursing homes' staff rather that the mandatory admissions arising from the Directive

55. On September 18, 2020, the Empire Center for Public Policy, Inc. (Empire Center) filed a lawsuit in the State Supreme Court in the County of Albany against the New York State Department of Health (DOH) after the DOH refused to release records showing the full count of coronavirus deaths among nursing home residents.

56. During this period, all Defendants continued to insist that all COVID-19 nursing home deaths were being fully, publicly, and accurately reported.

57. Throughout this same period, Plaintiff, in his public statements, continued to assert that the true number of COVID deaths in the State of New York were between 12,000 to 15,000.

58. On January 28, 2021 the New York State Attorney General Letitia James issued a report concluding that there had been a significant undercount by as much as 50%, of the number of COVID-19 deaths in New York nursing homes.

59. The January 2021 Attorney General report found that Article 30-D may have provided nursing homes with "financial incentives to put residents at risk of harm by refraining from investing public funds to obtain sufficient staffing to meet residents' care needs, to purchase sufficient PPE for staff, and to provide effective training to staff to comply with infection control protocols during pandemics and other public health emergencies."

60. On February 3, 2021, New York State Supreme Court Justice Kimberly A. O'Connor ruled in favor of the Empire Center directing the DOH to disclose the requested information and ordering the state to pay for the Empire Center's legal fees.

61. On February 11, 2021, Defendant Cuomo's Secretary (Chief of Staff) Mellissa DeRosa disclosed at a private meeting with Members of the New York legislature that the State had deliberately hidden the true number of COVID-19 deaths in New York State nursing. homes.

62. On April 6, 2021, Defendant Cuomo signed into law a bill that would repeal the COVID-19 related legal immunity granted to health care facilities and health care professionals previously described in Paragraph 46.

63. On April 28, 2021, the *New York Times* reported, as the named Plaintiff and other similarly situated families had maintained all along, that the State of New York had engaged in "a sustained effort" to hide the true nursing home death toll from the public and further that this cover up "was something Mr. Cuomo's aides had known since the previous spring."

64. On March 15, 2022, the NYS Comptroller Auditors found, in their audit and report, that the NYS DOH officials, under direction of Defendant Cuomo, purposefully undercounted the death toll by at least 4,100 residents and at times by more than 50 percent, allowing Defendant Cuomo to repeatedly and falsely claim that New York was doing a better job than other states in protecting highly vulnerable seniors, the report says. This happened as former governor Cuomo was enriching himself by writing a memoir and negotiating a $5.1mm book deal.

Among the reports findings

"While the Department's duty is to act solely to promote public health, we determined that, rather than providing accurate and reliable information during a public health emergency, the Department instead conformed its presentation to the Executive's narrative, often presenting data in a manner that misled the public,"

"DOH imposed impediments on the audit, including delaying requested data, limiting auditors' contact with program staff, not addressing auditors' questions during meetings, and not providing supporting documentation. These are not routine actions by state agencies undergoing an Office of the State Comptroller audit and raise serious concerns about the control environment at DOH."

65. On March 17, 2022, the NYS Comptroller, Tom DiNapoli, penned an Op-Ed to summarize the March 15, 2022 audit findings. It states "DOH staff was working tirelessly, but from April 12, 2020, to Feb. 3, 2021, the agency used alternating ways of reporting nursing home deaths with little public explanation. Over those 10 months, it failed to report at least 4,100 lives lost to COVID-19.

When it finally got a handle on tracking COVID nursing home deaths, and knew the correct numbers, the numbers continued to be underreported.

The public was misled by the highest level of state government and given a distorted version of reality that suppressed facts when they deserved the truth. It is unacceptable that we still don't know just how many nursing home residents died."

**First Claim for Relief (Federal)**
Constitutional Deprivation of Life

66. By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 58 of this Complaint as though fully set forth herein.

67. In violation of their duty of care as public officials of the State of New York, the willful and negligent actions of the Defendants Cuomo, the State of New York, Zucker and DeRosa caused the Decedent to contract COVID-19 while residing in a nursing home from which he ultimately

died. These actions constituted State action in violation of the Fourteenth Amendment of the U.S. Constitution protecting the life of Norman Arbeeny.

## Second Claim for Relief (State)
Wrongful Death

68. By this reference, Plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 60 of this Complaint as though fully set forth herein.

69. In violation of their duty of care as public officials of the State of New York, the willful and negligent actions of the Defendants Cuomo, the State of New York, Zucker and DeRosa caused the Decedent to contract COVID-19 while residing in a nursing home from which he ultimately died. These actions constituted a wrongful under the applicable provisions of State law (New York Consolidated Laws, Estates, Powers and Trusts Law Section 5-4.1).

## Third Claim (Federal)
Violation of the False Claims Act
(also brought in the name of the United States Government)

70. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 62 of this Complaint as though fully set forth herein.

71. The actions of Defendants Cuomo, the State of New York, Zucker and DeRosa to steer all elderly COVID care patients away from other federally provided cost-free facilities into New York state nursing homes constituted violations of the False Claims Act (31 U.S. Code §§ 3729 *et seq.*) which prohibits any person from knowingly allowing for the presentation a false or fraudulent claim for payment or approval to the United States government.

## Prayer for Relief

WHEREFORE, Plaintiff and Class Action participants pray for the following relief:

A. On the First claim, a judgment for deprivation of constitutional rights, compensatory damages, pain and suffering, and punitive damages for wrongful death in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all State Defendants.

B. On the second claim, a judgment for wrongful death, compensatory damages, pain and suffering, and punitive damages in an amount to be determined at trial, plus reasonable attorney fees against all State Defendants.

C. On the third claim, payments in the amount of three times the amount of damages the United States Government has sustained because of Defendants' actions plus reasonable attorney fees for the undersigned.

D. A jury trial on all appropriate issues;

E. An award of costs and expenses against all Defendants;

F. Any and all other relief this Court may deem appropriate.

Respectfully submitted,

Daniel N Arbeeny
124 Amity ST
Brooklyn, NY 11201
212-532-0488
Darbeeny@hotmail.com



US POSTAGE PAID
$8.95
Origin: 33618
04/21/22
1189150618-07

PRIORITY MAIL 3-DAY®

0 Lb 3.20 Oz
1006

EXPECTED DELIVERY DAY: 04/25/22

C030

SHIP TO:
225 CADMAN PLZ E
BROOKLYN NY 11201-1832

USPS TRACKING® #

9505 5132 5377 2111 3830 34



PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRIORITY MAIL ★

UNITED STATES POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Daniel Arbeeny
124 Amity St.
BKLYN, NY 11201

TO: Clerk's Office
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

ATTN: Pro Se Office

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

EP14F May 2020
OD: 12 1/2 x 9 1/2

INSURED