UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DANIEL N. ARBEENY, as the Administrator of the Estate
of NORMAN ARBEENY, individually and on behalf of
others, and SEAN S. NEWMAN, as the Administrator of
the Estates of Michael J. Newman and Dolores D. Newman,
individually and on behalf of others,

                                             Plaintiffs,

                  -against-

ANDREW M. CUOMO, MELISSA DeROSA, HOWARD
A. ZUCKER, M.D., GREATER NEW YORK HOSPITAL
ASSOCIATION, KENNETH RASKE, NORTHWELL
HEALTH, INC., MICHAEL DOWLING, and JOHN DOES
A-Z,

                                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

22 Civ. 2336 (LDH) (LB)
23 Civ. 02391 (LDH) (ARL)
(Consolidated)

---

**MEMORANDUM OF LAW OF DEFENDANTS NORTHWELL HEALTH, INC.
AND MICHAEL DOWLING IN SUPPORT OF MOTION TO DISMISS**

---

**ABRAMS FENSTERMAN, LLP**
*Attorneys for Defendants Northwell Health, Inc. and Michael Dowling*
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7010

TABLE OF CONTENTS

Preliminary Statement.................................................................................................... 1

Summary of Argument .................................................................................................. 1

The SAC........................................................................................................................ 3

Argument ...................................................................................................................... 5

   I. The SAC fails to state a viable 42 U.S.C. § 1983 claim against the Northwell Defendants ... 5

      A.  The SAC fails to allege that the Northwell Defendants acted under "color of state law.".................................................................................................................... 6

      1.  The SAC's conspiracy allegations against the Northwell Defendants are conclusory…………………………………………………………………………... 7

      2.  The SAC cannot state a § 1983 claim against the Northwell Defendants based on group pleading or *respondeat superior* liability. ........................................................ 9

      3.  The SAC's § 1983 claim against the Northwell Defendants is barred by the First Amendment and the *Noerr-Pennington* Doctrine. .................................................. 11

      B.  As a matter of law, the SAC cannot allege that the Northwell Defendants caused any injury.................................................................................................................. 15

  II.The SAC fails to state either a constitutional or statutory violation ...................................... 16

      A.  The SAC fails to state a substantive due process claim against the Northwell Defendants. ........................................................................................................ 16

      B.  The SAC fails to allege any FNHRA violation against the Northwell Defendants. 19

  III. The SAC's remaining two claims against the Northwell Defendants are meritless. ........... 20

      A. The SAC fails to state a claim under 42 U.S.C. § 1985(3). ......................................... 20

      B. The SAC fails to allege a claim for wrongful death...................................................... 21

  IV. The SAC, as against the Northwell Defendants, should be dismissed with prejudice. ...... 23

Conclusion ................................................................................................................... 24

TABLE OF AUTHORITIES

PAGE(S)

*Cases*

*Abdullahi v. Pfizer, Inc.*
  562 F.3d 163 (2d Cir. 2009), *cert. denied* 561 U.S. 1041 (2010) ............................................. 6

*Adams v. City of New York*
  2023 WL 2734611 (E.D.N.Y. Mar. 31, 2023) ...................................................................... 5, 10

*Arts4all Ltd. v. Hancock*
  25 A.D.3d 453 (1st Dep't 2006) ............................................................................................. 23

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................................................ 5

*Associated Container Transp. (Australia) Ltd. v. United States*
  705 F.2d 53 (2d Cir. 1983) .................................................................................................... 12

*Atuahene v. City of Hartford*
  10 Fed. App'x 33 (2d Cir. 2001) ............................................................................................. 5

*BE & K Constr. Co. v. NLRB*
  536 U.S. 516 (2002) .............................................................................................................. 11

*Betts v. Shearman*
  751 F.3d 78 (2d Cir. 2014) ..................................................................................................... 6

*Blyden v. Mancusi*
  186 F.3d 252 (2d Cir. 1999) .................................................................................................... 9

*Bryant v. Steele*
  93 F. Supp.3d 80 (E.D.N.Y. 2015) .......................................................................................... 9

*California Motor Transport Co. v. Trucking Unlimited*
  404 U.S. 508 (1972) .............................................................................................................. 12

*Chapel Farm Estates, Inc. v. Moerdler*
  2003 WL 21998964 (S.D.N.Y. August 22, 2003) .......................................................... 12, 13

*Ciambriello v. County of Nassau*
  292 F.3d 307 (2d Cir. 2002) ............................................................................................ 6, 7, 8

*City of Columbia v. Omni Outdoor Advertising, Inc.*
  499 U.S. 365 (1991) .............................................................................................................. 15

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998) .............................................................................................................. 17

*Dudley v. Meekins*
  2013 WL 1681898 (E.D.N.Y. April 17, 3013) ...................................................................... 21

*Duplan v. City of New York*
  888 F.3d 612 (2d Cir. 2018) .................................................................................................. 11

*EklecCo NewCo LLC v. Town of Clarkstown*
    2019 WL 2210798 (S.D.N.Y. May 21, 2019) ...................................................... 12

*Fisk v. Letterman*
    401 F. Supp.2d 362 (S.D.N.Y. 2005) .................................................................. 10

*Frei v. Taro Pharmaceuticals USA, Inc.*
    443 F. Supp.3d 456 (S.D.N.Y. 2020) .................................................................. 22

*G-I Holdings, Inc. v. Baron & Budd*
    179 F. Supp.2d 233 (S.D.N.Y. 2001) .................................................................. 12

*Ginx, Inc. v. Soho Alliance*
    720 F. Supp.2d 342 (S.D.N.Y. 2010) .................................................................. 15

*Green v. Bauvi*
    46 F.3d 189 (2d Cir. 1994) .................................................................................. 10

*Green v. City of New York*
    465 F.3d 65 (2d Cir. 2006) .................................................................................. 10

*Grogan v. Blooming Grove Volunteer Ambulance Corps.*
    768 F.3d 259 (2d Cir. 2014) .................................................................................. 6

*Hamilton v. Accu-tek*
    935 F. Supp. 1307 (E.D.N.Y. 1996) ................................................................... 22

*Hirschfeld v. Spanakos*
    104 F.3d 16 (2d Cir. 1997) .................................................................................. 14

*Iwachiw v. New York City Bd. of Educ.*
    2007 WL 433401 (E.D.N.Y. Feb. 5, 2007) .......................................................... 5

*Jeffrey v. City of New York*
    2022 WL 204233 (E.D.N.Y. Jan. 24, 2022) ........................................................ 9

*Jemmot v. Coughlin*
    85 F.3d 61 (2d Cir. 1996) .................................................................................... 10

*Juster Assocs. v. City of Rutland, Vt.*
    901 F.2d 266 (2d Cir. 1990) ............................................................................... 14

*Kim v. Kimm*
    884 F.3d 98 (2d Cir. 2018) .................................................................................. 23

*Liberty Lobby, Inc. v. Pearson*
    390 F.2d 489 (D.C. Cir. 1967) ............................................................................ 12

*LightSquared Inc. v. Deere & Co.*
    2015 WL 585655 (S.D.N.Y. Feb. 15, 2015), *aff'd* 632 Fed. App'x 653 (2d Cir. 2015); ......... 22

*Lombardi v. Whitman*
    485 F.3d 73 (2d Cir. 2007) ........................................................................... passim

*Longi v. New York*
    2006 WL 8441210 (E.D.N.Y. July 26, 2006) ...................................................... 6

*Lowrance v. Achtyl*
   20 F.3d 529 (2d Cir. 1994) ................................................................................. 17

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*
   7 F.3d 1085 (2d Cir. 1993) ................................................................................. 21

*Mitchell v. County of Nassau*
   786 F. Supp. 2d 545 (E.D.N.Y. 2011) ................................................................. 8

*Morpurgo v. Incorporated Village of Sag Harbor*
   697 F. Supp.2d 309 (E.D.N.Y. 2010) .................................................................. 9

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*
   701 F. Supp.2d 568 (S.D.N.Y. 2010) ........................................................... 14, 15

*Munn v. APF Mgmt. Co.*
   2020 WL 7264471 (S.D.N.Y. Dec. 10, 2020) ................................................... 23

*Nealy v. Berger*
   2009 WL 704804 (E.D.N.Y. March 16, 2009) ............................................... 8, 21

*Negron v. City of New York*
   976 F. Supp.2d 360 (E.D.N.Y. 2013) ................................................................ 21

*New West, L.P. v. City of Joliet*
   491 F.3d 717 (7th Cir. 2007) ........................................................................ 14, 15

*Nineteen Eighty-Nine. LLC v. Icahn Enterprises L.P.,*
   99 A.D.3d 546 (1st Dep't 2012) ....................................................................... 22

*Omnipoint Comms. Inc. v. Comi*
   233 F. Supp.2d 388 (N.D.N.Y. 2002) .......................................................... 13, 16

*Pangburn v. Culbertson*
   200 F.3d 65 (2d Cir. 1999) ................................................................................. 7

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*
   508 U.S. 49 (1993) ....................................................................................... 14, 15

*Rojas v. Alexander's Dep't Store, Inc.*
   924 F.2d 406 (2d Cir 1990) ......................................................................... 10, 11

*Roman Catholic Diocese of Rockville Centre, New York v.*
   *Incorporated Village of Old Westbury,* 2011 WL 666252 (E.D.N.Y. Feb. 14, 2011) ............... 6

*Ruotolo v. City of New York*
   514 F.3d 184 (2d Cir. 2008) .............................................................................. 23

*Shuford v. Cardoza*
   2023 WL 2706255 (E.D.N.Y. Mar. 30, 2023) .................................................... 5

*Sommer v. Dixon*
   709 F.2d 173 (2d Cir.), *cert. denied* 464 U.S. 857 (1983) .................................. 8

*Stewart v. Victoria's Secret Stores LLC*
   851 F. Supp. 2d 442 (E.D.N.Y. 2012) ................................................................ 8

iv

*Suburban Restoration Co. v. ACMAT Corp*
  700 F.2d 98 (2d Cir. 1983) ................................................................... 14

*Thomas v. Roach*
  165 F.3d 137 (2d Cir. 1999) ................................................................. 21

*Thompkins v. R.J. Tobacco Co.*
  92 F. Supp.2d 70 (N.D.N.Y. 2000) ....................................................... 22

*Tolentino v. City of Yonkers*
  2017 WL 4402570 (S.D.N.Y. Oct. 2, 2017) .......................................... 15

*Townes v. City of New York*
  176 F.3d 138 (2d Cir.) ................................................................... 15, 16

*Tri-Corp Housing, Inc. v. Bauman*
  826 F.3d 446 (7th Cir. 2016) ......................................................... 20, 23

*Tuosto v. Philip Morris USA Inc.*
  672 F. Supp. 2d 350 (S.D.N.Y. 2009) .................................................... 21

*Tuosto v. Philip Morris USA Inc.*,
  2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) .................................... 21, 22

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*
  389 U.S. 217 (1967) ............................................................................ 11

*United States v. Cruikshank*
  92 U.S. 542 (1875) ............................................................................. 12

*Vyrkin v. Triboro Bridge & Tunnel Auth.*
  2021 WL 2477144 (S.D.N.Y. June 17, 2021) .......................................... 5

*Walker v. Jastremski*
  430 F.3d 560 .......................................................................................... 7

*Weiss v. Willow Tree Civic Ass'n*
  467 F. Supp. 803 (S.D.N.Y. 1979) ......................................... 12, 13, 15

*Wright v. Smith*
  21 F.3d 496 (2d Cir. 1994) .................................................................... 9

*Ying Li v. City of New York*
  246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................................................... 9

**Statutes**

42 U.S.C. § 1396r .................................................................................... 1

42 U.S.C. § 1983 ........................................................................... passim

42 U.S.C. § 1985(3) ................................................................. 1, 20, 21

42 U.S.C. §§ 1396r(a)(1) ...................................................................... 20

N.Y. Est. Powers & Trusts Law § 5-4.1 .............................................. 21

U.S. Const. Amend. 1 ........................................................................... 11

***Rules***

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 5

Fed. R. Civ. P. 15........................................................................................................... 23

**PRELIMINARY STATEMENT**

Defendants Northwell Health, Inc. ("Northwell") and Michael Dowling ("Mr. Dowling"), Northwell's President and Chief Executive Officer (collectively, "Northwell Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the second amended complaint ("SAC") as against them, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

**SUMMARY OF ARGUMENT**

Beginning in March 2020, the COVID-19 pandemic presented an extraordinary, once-in-a-lifetime public-health crisis for New York State—and the rest of the world. Based on the need to expand hospital capacity to treat persons who had contracted COVID-19, the Department of Health ("DOH") issued two advisories, one on March 25, 2020 and the other on April 7, 2020, which prohibited nursing homes and assisted-living facilities from denying persons admission or re-admission based solely on a confirmed or suspected diagnosis of COVID-19 ("Advisories").

After DOH issued the Advisories, the named plaintiffs – and the proposed class of purportedly similarly situated individuals (collectively, "plaintiffs") – allegedly contracted COVID-19 while residing in New York nursing home or assisted-living facilities.  The SAC maintains that they tragically died as a result.  Thereafter, plaintiffs' legal representatives filed this astoundingly far-fetched and misguided civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985 ("§ 1983" or "§ 1985"), seeking to hold former New York State government officials and private parties, including the Northwell Defendants, liable for those fatalities.  The SAC maintains that the Advisories violated plaintiffs' substantive due process rights, as guaranteed by the Fourteenth Amendment, as well as certain statutory protections afforded by the Federal Nursing Home Reform Act, 42 U.S.C. § 1396r ("FNHRA").  It also presses state-law claims for wrongful death.

1

The loss of life suffered during the pandemic, and the pain left in its wake, remain unfathomable.  Indeed, perhaps no one experienced the horrors of COVID-19 more unrelentingly than healthcare providers, many of whom fell victim themselves.  But the Northwell Defendants did not ignite the viral surge that swept across New York and the world.  They worked tirelessly to contain it.  In the process, they did not violate anyone's federal constitutional or statutory rights.  Nor were they responsible for anyone's wrongful death.  And despite plaintiffs having had multiple chances to plead actionable harms, the SAC is still layered with incurable deficiencies.  Accordingly, plaintiffs' claims against the Northwell Defendants should be dismissed with prejudice.

To start, the SAC fails to allege that the Northwell Defendants, private parties, acted under color of state law, which is a necessary element of any § 1983 claim.  Instead, using vague and conclusory accusations of an implausible conspiracy, the SAC tries to state its claims against the Northwell Defendants by contending only that they helped draft the Advisories and then lobbied state officials to adopt them.  But drafting proposed regulations and lobbying government agencies for their implementation is a paradigmatic exercise of *individual* liberty that is protected by the First Amendment.  Thus, even assuming those allegations are true (which they are not), they do not caste the Northwell Defendants as state actors and therefore cannot support a § 1983 claim.

Nor does the SAC identify any violation of federal law by the Northwell Defendants that would trigger liability under § 1983.  New York State officials instituted the Advisories to combat a deadly and unfamiliar viral outbreak.  The scientific, economic, and legal responses to the COVID-19 crisis were evolving in real time in accordance with medical advancements and practical experience.  Under those circumstances, the Northwell Defendants' alleged support for the Advisories is simply not actionable.  Put differently, as a matter of law, none of their alleged

2

conduct is conscience-shocking in disregard of plaintiffs' substantive due process rights or even implicates the FNHRA.  In short, as against the Northwell Defendants, the SAC is bereft of any viable federal claim.

Finally, the SAC's wrongful death count should be dismissed for two straightforward reasons.  First, the SAC fails to allege an underlying tort that could ground a claim for wrongful death.   And second, like their federal civil rights claims, plaintiffs' state-law action for wrongful death is barred by the First Amendment.

Again, all claims against the Northwell Defendants should be dismissed with prejudice.

### THE SAC

The SAC recounts that, in March and April of 2020, the COVID-19 pandemic created an extraordinary public-health crisis for New York State. *See generally* SAC. The individual and putative class plaintiffs were individuals residing in nursing home or assisted-living facilities, who contracted COVID-19 after the Advisories were issued, and who died as a result. *Id.* at ¶¶ 1-10, 20-44. The defendants are former Governor Andrew Cuomo ("Governor Cuomo"), Melissa DeRosa, the former Secretary to the Governor ("DeRosa"), Howard A. Zucker, M.D., former DOH Commissioner (collectively, "New York Defendants"), the Northwell Defendants, the Greater New York Hospital Association ("GNYHA"), and GNYHA's President and Chief Operating Officer Kenneth Raske (collectively, the "GNYHA Defendants").  *See id.* at 3. Throughout the SAC, without differentiation between the specific persons or entities accused of wrongdoing, the New York Defendants, the Northwell Defendants, and the GNYHA Defendants are repeatedly and indiscriminately lumped together collectively as "Defendants." *See, e.g.*, *id.* at ¶¶ 54, 56, 60, 81-83, 85-94, 96, 99-100, 107, 109-110, 113-114, 116, 143, 145-148, 174-177, 208, 216, 220, 222, 224-231, 234-235, 237-239, 242.

In contrast, the SAC contains remarkably few allegations that relate specifically to the

Northwell Defendants. *See* SAC, ¶¶ 47, 49-51, 59, 71-72, 84, 177-179, 223, 229, 233. Those more specific allegations merely assert that: (1) between March and April of 2020, Mr. Dowling attended six meetings with Governor Cuomo regarding unspecified topics; (2) the Northwell Defendants "wrote" the Advisories" and "urged" and "lobb[ied]" for their issuance by DOH; and (3) after the Advisories were issued, DeRosa sent two emails to several people, including Mr. Dowling, regarding a pandemic-related topic that did *not* involve the Advisories. *See id.* at ¶¶ 49-51, 59, 71-72, 223. The pleading quickly takes a very cynical, unsupported, and highly implausible turn by insinuating that the Northwell Defendants supported the Advisories because their implementation would generate higher Medicare revenue for hospitals. *See id.* at ¶¶ 51, 97-99. That theory is counterfactual because, as the SAC acknowledges, Northwell is a "nonprofit integrated healthcare network." *Id.* at ¶ 16.

The SAC then makes an unbridgeable leap of both fact and law.  It concludes that the Northwell Defendant's alleged conduct is "attributable to the New York defendants," demonstrates that the Northwell Defendants were "willful participants in joint activity with the New York Defendants," and entered "an agreement" with the New York Defendants as part of a "conspiracy to interfere" with plaintiffs' civil rights. *See id.* at ¶¶ 84, 177-179, 223, 233-235, 237-239.  Based only on the Northwell Defendants' claimed support for the Advisories, the SAC accuses them of violating plaintiffs' statutory and substantive due process rights to: (1) the patient protections afforded by FNHRA; (2) be free from cruel and inhuman treatment; (3) safe conditions and personal security; (4) life; and (5) bodily integrity.  *See* SAC, ¶¶ 190-220. In turn, the SAC seeks monetary damages and other relief pursuant to 42 U.S.C. §§ 1983 and 1985, and New York's wrongful death statute.  *See id.* at ¶¶ 57, 171-179, 190-242.

## STANDARD OF REVIEW

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief *that is plausible on its face*." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added and internal quotation marks omitted). That standard is not satisfied by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* To the contrary, "[w]hile legal conclusions can provide the framework of a complaint," those conclusions "must be supported by factual allegations." *Id.* at 679. Accordingly, a complaint "must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)" if it "fails to allege any discernible facts from which to identify any potential federal claims." *Iwachiw v. New York City Bd. of Educ.*, 2007 WL 433401, *5 (E.D.N.Y. Feb. 5, 2007), *aff'd* 318 Fed. App'x 8 (2d Cir. 2009). A complaint must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it includes "group pleading," *i.e.*, "'lump[ing] all the defendants together in each claim and provid[ing] no factual basis to distinguish their conduct.'" *Adams v. City of New York*, 2023 WL 2734611, *6 (E.D.N.Y. Mar. 31, 2023) (quoting *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001)).

## ARGUMENT

### I

### The SAC fails to state a viable 42 U.S.C. § 1983 claim against the Northwell Defendants

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege three elements: (1) the defendant acted "under color of state law"; (2) the defendant deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (3) the defendant's acts were the proximate cause of plaintiff's injuries. *See Shuford v. Cardoza*, 2023 WL 2706255, *4 (E.D.N.Y. Mar. 30, 2023); *Vyrkin v. Triboro Bridge & Tunnel Auth.*, 2021 WL 2477144, *5 (S.D.N.Y. June 17, 2021). The SAC fails to allege any those elements adequately, thereby

requiring dismissal of the § 1983 claims against the Northwell Defendants.

**A.  The SAC fails to allege that the Northwell Defendants acted under "color of state law."**

Liability under § 1983 "may only be imposed upon wrongdoers who carry a badge of authority of a State and represent it in some capacity." *Longi v. New York*, 2006 WL 8441210, *22 (E.D.N.Y. July 26, 2006) (internal quotation marks omitted), *aff'd* 363 Fed. App'x 57 (2d Cir. 2010). Indeed, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (internal quotation marks omitted).  To do so requires showing "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (internal quotation marks omitted), *cert. denied* 562 U.S. 163 (2010).[1]

Although courts have developed several tests for identifying state action involving private parties,[2] the SAC essentially alleges only that the Northwell Defendants engaged in a *conspiracy* with the New York Defendants to deprive plaintiffs of their federal constitutional and statutory rights. *See e.g.,* SAC, ¶¶ 177 (Northwell Defendants became "'willful participants' . . . in activity with the New York Defendants which deprived others of constitutional rights"); 179 ("Northwell

---

[1]    "The plaintiff bears the burden of proof to establish whether a private actor has acted under color of state law." *Roman Catholic Diocese of Rockville Centre, New York v. Incorporated Village of Old Westbury*, 2011 WL 666252, *7 (E.D.N.Y. Feb. 14, 2011) (internal quotation marks omitted).

[2]    *See, e.g., Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 264-70 (2d Cir. 2014) (discussing "Public Function" and "Entwinement" tests for state action), *cert. denied* 575 U.S. 984 (2015); *Betts v. Shearman*, 751 F.3d 78, 84-86 (2d Cir. 2014) (discussing "Joint Activity" test for state action);    *Longi*, 2006 WL 8441210, at *22 (discussing "Close Nexus/Joint Action," "State Compulsion," and "Public Function" tests for state action).

Defendants were "willful participants in joint activity"); 223 (Northwell Defendants' "political, lobbying [and] legislative drafting . . . "constituted a corrupt conspiracy taken under color of law"); 233 ("there was an agreement between [the New York Defendants] and the [Northwell Defendants] to act in concert to inflict unconstitutional injury").  To state a viable § 1983 conspiracy claim, a plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict and unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  The SAC falls far short of satisfying those requirements.

### 1.    The SAC's conspiracy allegations against the Northwell Defendants are conclusory.

The SAC makes only hollow accusations that the Northwell Defendants conspired with anyone.  Without providing any supporting facts, plaintiffs simply declare that: (1) the Advisories "were the product of a conspiracy of corruption" between the New York Defendants and the Northwell Defendants; (2) all Defendants "act[ed] individually and in concert with one another;" (3) the Northwell Defendants acted "in conjunction with" the New York Defendants; (4) the Northwell Defendants were "willful participants" because Mr. Dowling "engaged in activity with the New York Defendants;" (5) the Northwell Defendants were "willful participants in joint activity with the New York Defendants;" and (6) "there was an agreement between" the Northwell Defendants and the New York Defendants "to act in concert to inflict an unconstitutional injury through promulgation of the [Advisories]." SAC at ¶¶ 51, 56, 58-59, 84 177, 179, 233. But those are precisely the type of "conclusory or general allegations," lacking any specific factual underpinning, that are insufficient to state a section 1983 claim. *Walker v. Jastremski*, 430 F.3d 560, 564 n. 5 (2d Cir. 2005) ("conclusory or general allegations are insufficient to state a claim for

conspiracy under § 1983"), *cert. denied* 547 U.S. 1101 (2006).

Indeed, the Second Circuit has repeatedly ruled that bald references to a private individual's supposed "joint activity" and "conspiracy" with government officials are insufficient to support an actionable § 1983 claim. *See Ciambriello*, 292 F.3d at 324 ("merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"), *cert. denied* 464 U.S. 857 (1983); *see also Stewart v. Victoria's Secret Stores LLC*, 851 F. Supp. 2d 442, at 445 (E.D.N.Y. 2012) (same); *Mitchell v. County of Nassau*, 786 F. Supp. 2d 545, 565 (E.D.N.Y. 2011) (same); *Nealy v. Berger*, 2009 WL 704804, *5 (E.D.N.Y. Mar. 16, 2009) (same).  To establish an unlawful agreement between the Northwell Defendants and the New York Defendants, the SAC offers no more than empty rhetoric.

The scant factual assertions that the SAC does advance are likewise devoid of any indication that the Northwell Defendants were jointly engaged with state officials to deprive plaintiffs of their civil rights.  According to the pleadings, between March and April of 2020, Mr. Dowling supposedly attended nine meetings with Governor Cuomo concerning *unspecified topics*, and – after DOH issued the Advisories – Ms. DeRosa sent two emails to a group of several people, including Mr. Dowling, that only discussed using a naval hospital ship for New York COVID-19 patients. *See* SAC at ¶¶ 47, 49, 71-72.  None of those alleged communications ever mention the Advisories (or even implicitly reference them), much less evidence an unlawful pact among defendants to employ the Advisories as a means of harming nursing home residents. *See Morpurgo v. Incorporated Village of Sag Harbor*, 697 F. Supp.2d 309, 337 (E.D.N.Y. 2010) (dismissing §

1983 conspiracy claim where plaintiff had "not set forth any allegations of an agreement or 'meeting of the minds'"), *aff'd* 417 Fed. App'x 96 (2d Cir 2011).    Because "mere [c]ommunications, even regular ones, between a private actor and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor," the SAC plainly fails to state a violation of § 1983 against the Northwell Defendants. *Bryant v. Steele*, 93 F. Supp.3d 80, 91 (E.D.N.Y. 2015) (internal quotation marks omitted).

### 2. The SAC cannot state a § 1983 claim against the Northwell Defendants based on group pleading or *respondeat superior* liability.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (same).    Accordingly, "[p]leadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017); *see also Jeffrey v. City of New York*, 2022 WL 204233, *3 (E.D.N.Y. Jan. 24, 2022) (same).    The SAC flouts both those rules.

For example, the Northwell Defendants are referenced only 16 times in the entire 242-paragraph, 60-page pleading, and those brief references are almost always wrapped in conclusory statements or legal assertions.    *See* SAC, ¶¶ 16-18, 49-51, 59, 72, 75, 84, 160, 177-79, 223, 233. Notably, in the great majority of remaining allegations, the SAC summarily charges *all defendants* (defined collectively as "Defendants") with indiscriminate claims of misconduct.    *See generally* SAC.    Such haphazard consolidation of parties, however, constitutes "group pleading," which "is insufficient to allege the personal involvement necessary for Section 1983 liability." *Adams*, 2023 WL 2734611, at *6.

The SAC also disregards another aspect of the "personal involvement" requirement that governs § 1983 claims.  It is a bright-line rule.  "There is no *respondeat superior* liability in § 1983 cases."  *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1994); *see also Jemmot v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (same).  That means "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that action pursuant to official . . . *policy* of some nature caused a constitutional tort."  *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir 1990) (emphasis in original & internal quotation marks and citations omitted), *cert. denied* 502 U.S. 809 (1991); *see also Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006) (private hospital "is not vicariously liable for any constitutional torts that its employees may have committed").  In other words, the only way "a private corporation could be held liable under Section 1983" would be based on "its own unconstitutional policies."  *Fisk v. Letterman*, 401 F. Supp.2d 362, 375 (S.D.N.Y. 2005).

The SAC 's keystone allegation against Northwell the corporation, however, actually shields the company from any liability.  The pleadings pointedly state that Northwell "became [a] 'willful participant[]'" in purported misconduct "when [its] agent[], specifically Defendant[] . . . Dowling[,] engaged in activity with the New York Defendants which deprived others of constitutional rights."  SAC ¶ 177.  That allegation is the classic formulation of *respondeat superior* liability.  And by insisting that Northwell is *vicariously* liable for the purported actions of a single corporate officer, the SAC pleads the company right out of court.[3]

---

[3]    Furthermore, any *respondeat superior* claim based upon Mr. Dowling's alleged activity would necessarily fail because the SAC does *not* allege that he committed any wrongful conduct.  According to the SAC, in March 2020, Mr. Dowling may have attended six meetings of unknown import with Governor Cuomo and, in April 2020, he received one email from Ms. DeRosa that did not address the Advisories.  *See* SAC ¶¶ 49, 71-72.  Those allegations do not even suggest, much less establish, that Mr. Dowling did anything wrong.

In any event, the SAC also fails to identify any official policy or practice adopted by Northwell – a "nonprofit integrated healthcare network that is New York State's largest healthcare provider . . . with more than 81,000 employees" – that might support a § 1983 claim.  SAC ¶ 16. Apart from the conclusory assertion that Northwell somehow worked with state officials to create "a plan, prearrangement, conspiracy, custom, and/or policy," *Id.* at ¶ 179, the pleading nowhere describes what Northwell's alleged unconstitutional policy was or how it was effectuated.  No corporate policy, no § 1983 liability.  That omission alone requires dismissal of the § 1983 claim against Norwell.  *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (affirming dismissal of § 1983 claim for failure to allege challenged actions "were performed pursuant to a municipal policy or custom" internal quotation marks omitted)); *Rojas*, 924 F.2d at 409 (extending § 1983 policy requirement "to private businesses").

### 3. The SAC's § 1983 claim against the Northwell Defendants is barred by the First Amendment and the *Noerr-Pennington* Doctrine.

The crux of the § 1983 claim against the Northwell Defendants – that they purportedly violated plaintiffs' constitutional and statutory rights by "drafting" the Advisories and "urging" and "lobbying" state officials to implement them, *see* SAC at ¶¶ 50, 59, 223 – is squarely at odds with the law of the land.  The First Amendment guarantees an individual's right "to petition the Government for a redress of grievances," U.S. Const. Amend. 1, and the Supreme Court has repeatedly emphasized that the right to "petition is one of the 'most precious of the liberties safeguarded by the Bill of Rights.'"  *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)).  It "is inherent in the "very idea of a government, republican in form," *United States v. Cruikshank*, 92 U.S. 542, 552 (1875) and thus "fundamental to our representative democracy," *Associated Container Transp. (Australia) Ltd. v. United States*, 705 F.2d 53, 58-59 (2d Cir. 1983):

*see also EklecCo NewCo LLC v. Town of Clarkstown*, 2019 WL 2210798, *11 (S.D.N.Y. May 21, 2019) (right to petition "must be carefully guarded because it is one vital medium through which citizens may participate in government").

Over time, the right to petition has developed a broad wingspan.  Because the "whole concept of representation depends upon the ability of the people to make their wishes known to their representatives," the right to lobby now "extends to all departments of the Government." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972).  And "every person or group engaged . . . in trying to persuade [governmental] action is exercising the First Amendment right of petition." *Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967); *see also G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp.2d 233, 256 n.2 (S.D.N.Y. 2001) ("Lobbying activities directed towards influencing Congressional policies constitute an exercise of the First Amendment right to petition government.").

The SAC contends that the Northwell Defendants lobbied state officials to adopt the Advisories.  *See* SAC ¶¶ 50, 59, 223.  In no circumstance, though, could such alleged behavior be considered "state action" under § 1983.  Courts have flatly rejected the proposition that someone can "violate[] [another's] constitutional rights by lobbying government officials." *Chapel Farm Estates, Inc. v. Moerdler*, 2003 WL 21998964, *6 (S.D.N.Y. August 22, 2003) (dismissing § 1983 claim based on defendant's alleged lobbying); *see also Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803, 818 (S.D.N.Y. 1979) (same).  To the contrary, "[f]ar from being a violation of [anyone's] rights, such activity is the constitutional right" of the lobbyist.  *Chapel Farm Estates, Inc.*, 2003 WL 21998964, at *6.  As such, it is purely private conduct, and "merely private conduct, no matter how discriminatory or wrongful is not action under color of state law." *Id.* (internal quotation marks omitted).

As Judge Weinfeld explained, "the First Amendment protects attempts to influence the passage or enforcement of laws, no matter how harmful their incidental impact on third parties may be." *Weiss*, 467 F. Supp. at 818 (internal quotation marks omitted).  Here, the SAC insists that the Northwell Defendants' claimed advocacy resulted in New York State adopting the Advisories, which, in turn, led to the COVID-19 deaths of untold numbers of nursing home and assisted living residents. Those are terrible and tragic allegations.  But because the "actions attributed to the defendants upon which plaintiffs predicate their claims under [§ 1983] are protected by the First Amendment's guarantees of the rights to assemble, to petition their government and to associate[], . . . they cannot serve as the basis for liability under the civil rights statutes." *Id.*[4]

That analysis tracks the application of a related constitutional immunity, known as the *Noerr-Pennington* doctrine.  "The *Noerr-Pennington* doctrine refers to a trilogy of Supreme Court cases, . . . holding that activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition are wholly immune from federal antitrust liability unless the conduct falls within the 'sham exception' to the doctrine."  *Suburban Restoration Co. v.*

---

[4]     The SAC tries to make much of the allegation that the Northwell Defendants' "did not just lobby" for the Advisories, but "they actually wrote the [Advisories] in conjunction with the New York Defendants."  SAC ¶ 59; *see also id.* at ¶ 223 (alleging that Northwell Defendants engaged in "state action" through "legislative drafting").  That added contention does not save the case. Drafting language for proposed legislation (which lobbyists regularly do) is not state action for the purposes of § 1983.  *See Omnipoint Comms. Inc. v. Comi*, 233 F. Supp.2d 388, 395 (N.D.N.Y. 2002) (rejecting claim that defendants "acted under color of state law when they drafted the language of Local Law No. 1").  Were the law otherwise, "any private citizen that recommended proposed legislation or drafted proposed legislation that was subsequently declared unconstitutional would be subject to liability under section 1983."  *Id.*

*ACMAT Corp*, 700 F.2d 98, 99 (2d Cir. 1983) (internal citations omitted).[5]  In fashioning the immunity, "the Court recognized that attempts to influence legislation were an inherent part of the political process protected by the First Amendment."  *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 271 (2d Cir. 1990).

Beyond antitrust claims, the courts have gradually "extended [*Noerr-Pennington*] to provide immunity from liability for bringing other suits."  *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997); *see also New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) ("*Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses.").  The Second Circuit "has yet to address whether the *Noerr-Pennington* analysis applies to claims alleging civil rights violations," but "the majority of circuit courts have embraced the view that the *Noerr-Pennington* doctrine and related First Amendment protections bar liability for alleged violations of the civil rights laws."  *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp.2d 568, 595 (S.D.N.Y. 2010) (listing decisions of the Ninth, Eighth, Seventh, Sixth, Fifth, and Third Circuits applying *Noerr-Pennington* to bar federal civil rights claims).  District Courts in this Circuit have similarly applied *Noerr-Pennington* immunity to bar § 1983 claims.  *See, e.g., Mosdos Chofetz Chaim*, 701 F. Supp.2d at 596; *Weiss*, 467 F. Supp. at 818; *cf. Ginx, Inc. v. Soho*

---

[5]      For the purposes of applying *Noerr-Pennington*, the Supreme Court regards "as sham private action that is not genuinely aimed at procuring favorable government action, as opposed to a valid effort to influence government action."  *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) (internal quotation marks omitted). Further, an individual's motivation in seeking government action is irrelevant to the immunity calculation. The Court has unambiguously instructed "that [t]he right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so."  *Id.* (internal quotation marks omitted).  It necessarily follows "that a successful effort to influence governmental action . . . certainly cannot be characterized as a sham."  *Id.* (internal quotation marks omitted).

*Alliance*, 720 F. Supp.2d 342, 365 (S.D.N.Y. 2010) (barring § 1981 claim under *Noerr-Pennington*).

The doctrine should apply here.  At bottom, the SAC alleges only that the Northwell Defendants *successfully* lobbied for the Advisories, which makes the "sham" exception to *Noerr-Pennington* immunity inapplicable to their alleged conduct.  *See Professional Real Estate Investors*, 508 U.S. at 58.[6]  And even though the pleadings speculate wildly and falsely that the Northwell Defendants "knew or should have known that the [Advisories] would be a deadly disaster for elderly nursing home residents" – but nevertheless lobbied for them "anyway as a means of increasing . . . profits" – the constitutional and statutory claims asserted by plaintiffs remain unenforceable.  SAC at 7.  The "holding of *Noerr* is that lobbying is protected whether or not the lobbyist used deceit," *New West*, 491 F.3d at 722, and regardless of the lobbyist's subjective intent, *see Professional Real Estate Investors*, 508 U.S. at 58.

**B.  As a matter of law, the SAC cannot allege that the Northwell Defendants caused any injury.**

Like a common law tort claim, a § 1983 action "employs the principle of proximate causation."  *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir.), *cert denied* 528 U.S. 964 (1999).  That analysis "may involve determining whether an intervening or superseding cause break[s] the causal chain between the defendant's action and the plaintiff's injuries."  *Tolentino v. City of Yonkers*, 2017 WL 4402570, *5 (S.D.N.Y. Oct. 2, 2017) (internal quotation marks omitted).  As a matter of law, that "chain of causation" can be broken "by the intervening exercise of independent judgment."  *Townes*, 176 F.3d at 147.

---

[6]     That conclusion holds true despite the SAC's allegations of a conspiracy between the Northwell Defendants and state officials.  The Supreme Court has flatly "rejected" a conspiracy exception to the *Noerr-Pennington* doctrine.  *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 383 (1991).

The SAC describes that specific scenario.  According to plaintiffs' own allegations, "[a]t the urging of . . . Northwell," *state officials* "issued" the Advisories.  SAC ¶ 50.  But only the state officials – *not* the Northwell Defendants – had both authority and ability to implement those directives. The Northwell Defendants could only lobby for them.

Clearly, then, it was the "exercise of independent judgment" by state officials that "broke the chain of causation for purposes of § 1983 liability."  *Townes*, 176 F.3d at 147.  As one court aptly summarized the obvious point, "[w]hile Defendants provided advice, it was ultimately the [government's] decision to accept that advice."  *Omnipoint Comms.,* 233 F. Supp.2d at 395 (rejecting claim that consultant who drafted local law for town's consideration was "state actor" under § 1983).  As a matter of law, the Northwell Defendants did not *cause* any harm.

## II

### The SAC fails to state either a constitutional or statutory violation against the Northwell Defendants.

The Court's analysis need go no farther because the SAC fails to allege the prerequisites for invoking § 1983 against the Northwell Defendants.  Those failings are not the only grounds for dismissal, though, as the SAC is even more fundamentally defective.  In short, it does not allege a violation of federal law.  Neither the substantive due process claim nor the FNHRA claim is actionable and therefore could not support a § 1983 complaint.  For those reasons, too, the SAC's § 1983 claims against the Northwell Defendants should be dismissed.

### A. The SAC fails to state a substantive due process claim against the Northwell Defendants.

Read liberally, the SAC accuses the Northwell Defendants of lobbying New York State to implement the Advisories while all the time knowing that those directives posed a grave threat of spreading COVID-19 among elderly residents of nursing homes and assisted-living facilities.  *See,*

16

*e.g.,* SAC ¶ 60.  Such alleged conduct, the SAC maintains, constituted deliberate and reckless indifference toward elderly New Yorkers, and demonstrated malicious intent to an extent that shocks the conscience.  *See, e.g., id.* at ¶ 110.  Again, the Northwell Defendants are solely accused of "urging" government officials to adopt the Advisories, *id.* at ¶ 50, but, according to the SAC, their actions violated plaintiffs' substantive due process rights, *see id.* at ¶¶ 207-224.  The law says otherwise.

Even accepting those allegations as true, the SAC's substantive due process theory is dreadfully misguided.  "Substantive due process protects individuals against government action that is arbitrary, . . . conscious-shocking, . . . or oppressive in a constitutional sense."  *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted). Whether substantive due process rights have been violated is a relative analysis.  As the Supreme Court has instructed, "[r]ules of due process are not . . . subject to mechanical application in unfamiliar territory." *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998).  Behavior that "shocks in one environment may not be so patently egregious in another," and courts should be mindful that "preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking."  *Id.*

The analytical hesitation displayed by the Court demonstrates an understanding that "the conscience recognizes the dilemma of conflicting obligations," and in "the apparent absence of harmless options at the time decisions must be made, an attempt to choose the least of evils is not itself shocking."  *Lombardi v. Whitman*, 485 F.3d 73, 82 (2d Cir. 2007).   That comparative approach also serves a very practical function.  It helps to ensure that – in times of crisis – substantive due process liability is not "allowed to inhibit or control policy decisions of

government agencies, even if some decisions could be made to seem gravely erroneous in retrospect." *Id.* at 84.

The Second Circuit's decision in *Lombardi* ought to control the outcome here. In that case, 9/11 search, rescue and, clean-up workers sued federal officials, claiming that those officials "issued reassuring – *and knowingly false* – announcements about the air quality in lower Manhattan." 485 F.3d at 74 (emphasis added). According to the complaint, those announcements misled workers to believe that "it was safe to work at the site without needed respiratory protection." *Id.* Workers later brought a class action on behalf of those exposed to deadly toxins without having adequate respiratory protection, claiming that the government's deception about air safety violated their substantive due process rights. *See id.* at 75.

In rejecting the workers' substantive due process claim, the Court held that "the complaint's allegations [did] not shock the conscience." *Lombardi*, 485 F.3d at 74. The opinion continues: "when [government] officials decide how to reconcile competing governmental obligations in the face of disaster, only an *intent* to harm arbitrarily can shock the conscience in a way that justifies constitutional liability." *Id.* at 74-75 (emphasis added). The Second Circuit further held that even allegations of a defendant's "deliberate indifference" did not save the claim. *Id.* at 74.

That directive disposes of the SAC. Nowhere do the pleadings allege that the Northwell Defendants *intentional*ly sought to infect elderly nursing home and assisted living residents with a deadly virus. At worst, the SAC insists that the Northwell Defendants' alleged lobbying was reckless and undertaken with deliberate indifference. *See, e.g.,* SAC at 7, ¶¶ 83, 109-110, 146-48, 224-25. But in the context of a health or safety crisis – where government officials must "make

decisions using rapidly changing information about the ramifications of unprecedented events" – an actionable substantive due process claim requires more. *Lombardi*, 485 F.3d at 82.

In fact, the SAC cites a joint statement by the Society of Post-Acute and Long-Term Medicine, the National Center for Assisted Living, and the American College of Health Care Administrators warning New York and *other states* against adopting the policies contained in the Advisories as an "approach to developing [COVID-19] surge capacity." *See* SAC ¶¶ 61-63. Notably, the statement, as quoted in the SAC, also confirmed "that *other states* [besides New York] may already be adopting a similar approach in order to free up hospital beds." *Id.* at ¶ 63 (emphasis added). In other words, to address the surging viral spread in real time, New York (supposedly urged by the Northwell Defendants) was not the only state to respond by implementing comparable nursing home admission policies.

Acknowledging that other jurisdictions – incorrectly or not – were grappling in similar ways with hospitals overcome by COVID-19 patients, the SAC effectively "concedes that the alleged wrongs to the plaintiffs were committed in aid of competing public goals that were not insubstantial." *Lombardi*, 485 F.3d at 83. And that reality necessarily defeats the SAC's substantive dure process claim because such conduct – even if horribly wrong in hindsight – does not violate the Constitution. "[A] poor choice made by an executive official between or among the harms risked by the available options is not conscious-shocking merely because for some persons it resulted in grave consequences that a correct decision could have avoided." *Id.* at 85.

**B. The SAC fails to allege any FNHRA violation against the Northwell Defendants.**

The SAC also alleges violations of the FNHRA as a basis for its § 1983 action against the Northwell Defendants. *See* SAC ¶¶ 56-57. Those allegations are unavailing. It takes only a passing glance at the statute to see that it provides no such support.

To start, the FNHRA regulates the *conduct* of "nursing facilities" by guaranteeing residents certain basic standards of care.  *See generally* 42 U.S.C. §§ 1396r(a)(1) (defining "nursing facility"), 1396r(b) (enumerating required statutory standards of care).  The SAC is devoid of any allegation, however, that Northwell, acting as a "nursing facility" (as that term is statutorily defined), violated anyone's rights under the FNHRA.  In fact, the SAC does not even allege that the named decedents contracted COVID-19 at a Northwell facility.  *See* SAC ¶¶ 1, 4, 7.

Moreover, there is simply no connection between the Northwell Defendants' alleged conduct – lobbying in favor of the Advisories – and any possible violation of the FNHRA.  The SAC does not allege that the Northwell Defendants denied plaintiffs "any right under the Act." *Tri-Corp Housing, Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016) (dismissing Fair Housing Act claim as barred by *Noerr-Pennington* where defendant merely issued statements and press releases and lobbied zoning board).  Instead, it accuses the Northwell Defendants "of *speech* not action.  And that's all the difference."  *Id.*

### III

**The SAC's remaining two claims against the Northwell Defendants are meritless.**

**A. The SAC fails to state a claim under 42 U.S.C. § 1985(3).**

Invoking the same conclusory and implausible conspiracy allegations that form its § 1983 claims, the SAC also asserts a cause of action under § 1985 for conspiracy to deprive plaintiffs of their civil rights.  *See* SAC ¶¶ 236-39.  The claim stumbles out of the gate.  To state a viable § 1985 claim, a plaintiff must allege that the conspirators' conduct was motivated by "some racial or perhaps otherwise class-based invidious discriminatory animus."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks omitted); *see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Because the SAC "fails to allege any class-based invidious discrimination, it fails to state a claim under § 1985(3)."  *Nealy v. Berger*, 2009

WL 704804, *8 (E.D.N.Y. March 16, 2009).

But even if the SAC had asserted that some sort of invidious discrimination was at play, its § 1985 claim would still fail.  The identical vague and unsupported conspiracy allegations that cannot support a § 1983 claim are likewise insufficient to state a § 1985 claim.  Both conspiracy claims should be dismissed for the same reason.  *See Dudley v. Meekins*, 2013 WL 1681898, *3 (E.D.N.Y. April 17, 3013) (dismissing both § 1983 claim and § 1985 claim for insufficient allegations of conspiracy); *Nealy*, 2009 WL 704804, at *8 (same).

**B.  The SAC fails to allege a claim for wrongful death.**

Under New York law, a decedent's personal representative can bring an action to "recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. Powers & Trusts Law § 5-4.1; *see also Negron v. City of New York*, 976 F. Supp.2d 360, 373 (E.D.N.Y. 2013) (listing elements of statutory cause of action for wrongful death). A wrongful death claim is thus "derivative," that is, a plaintiff "must first properly plead that the decedent could have brought an action against [the defendant] for injuries caused by a "wrongful act, neglect, or default." *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 367 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, *16 (S.D.N.Y. Aug. 21, 2007) ("wrongful death action can only be maintained if the defendant would have been liable to an action in favor of the decedent . . . if death had not ensued" (internal quotation marks omitted)). The SAC fails in this respect for at least two reasons.[7]

---

[7]    Because the SAC improperly uses "group pleading," *see supra* at 10-11, it is unclear if the SAC even asserts a wrongful death claim against the Northwell Defendants.  At first, the SAC alleges only that "the *New York Defendants'* . . . course of conduct resulted in" the death of elderly nursing home and assisted living facility residents.  Yet, it goes on to charge *all* "Defendants"

First, the pleadings do not allege any *viable* tort or statutory violation for which the Northwell Defendants could have been liable had plaintiffs not died. The predicate 'wrongfulness' upon which to base a cause of action for wrongful death is simply lacking in this case. The claim should therefore be dismissed. *See, e.g., Frei v. Taro Pharmaceuticals USA, Inc.,* 443 F. Supp.3d 456, 471 (S.D.N.Y. 2020); *aff'd* 844 Fed. App'x 444 (2d Cir. 2021), *cert.* denied, 142 S. Ct. 766 (2022); *Tuosto*, 2007 WL 2398507, at *16; *Thompkins v. R.J. Tobacco Co.* 92 F. Supp.2d 70, 94 (N.D.N.Y. 2000).

Second, the SAC's wrongful death claim is likewise precluded by the *Noerr-Pennington* doctrine, which numerous courts have also applied to bar common law tort actions. *See, e.g., LightSquared Inc. v. Deere & Co.*, 2015 WL 585655, *15 (S.D.N.Y. Feb. 15, 2015) ("the *Noerr-Pennington* doctrine 'bar[s] liability in state common law tort claims, including negligence . . . for statements made in the course of petitioning the government'" (quoting *Tuosto,* 2007 WL 2398507, at *5)), *aff'd* 632 Fed. App'x 653 (2d Cir. 2015); *Hamilton v. Accu-tek,* 935 F. Supp. 1307, 1317 (E.D.N.Y. 1996) ("*Noerr-Pennington* has also been applied to various state law claims."). New York courts, for example, have even applied the doctrine in dismissing claims for *prima facie* tort. *See Nineteen Eighty-Nine. LLC v. Icahn Enterprises L.P.*, 99 A.D.3d 546, 547 (1st Dep't 2012); *Arts4all Ltd. v. Hancock*, 25 A.D.3d 453, 454 (1st Dep't 2006). Here, the SAC accuses the Northwell Defendants of lobbying. Again, the allegations of misconduct involve "*speech* not action. And that's all the difference." *Tri-Corp Housing, Inc.*, 826 F.3d at 449 (emphasis in original).

---

collectively with liability. SAC ¶¶ 241-42 (emphasis added). The Court need not address that defect, however, as the SAC's allegations are otherwise wholly deficient.

**IV**

**The SAC, as against the Northwell Defendants, should be dismissed with prejudice.**

Although leave to amend a complaint should ordinarily be given freely, "it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). On this point, the Second Circuit has instructed that such leave may be denied for "repeated failure to cure the deficiencies by amendments previously allowed." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

Plaintiffs have now had no less than *three* chances to file an actionable pleading and have failed all three times. The deficiency of the SAC is further magnified by the fact that plaintiffs have had the benefit of pre-motion letters submitted by all defendants, which identified, in detail, the legal deficiencies contained in prior complaints. Yet, the SAC realleges the same defective claims. Plaintiffs' repeated inability to state a viable claim demonstrates both that plaintiffs have exhausted their opportunity under Fed. R. Civ. P. 15 to amend and the futility of trying to do so again. The Court should dismiss the SAC with prejudice. *See Munn v. APF Mgmt. Co.,* 2020 WL 7264471, \*9 (S.D.N.Y. Dec. 10, 2020) (*sua sponte* denying plaintiff leave to replead after plaintiff had amended the complaint twice and had "the benefit of pre-motion letters from the Defendants").

## CONCLUSION

For all these reasons, the SAC should be dismissed against the Northwell Defendants in its

entirety and with prejudice.

Dated: White Plains, New York
       November 17, 2023

                                        Respectfully submitted,

                                        _____

                                        Daniel S. Alter
                                        Aaron Zucker
                                        Edward A. Smith
                                        Abrams Fensterman, LLP
                                        dalter@abramslaw.com

                                        *Counsel for Defendants Northwell Health,
                                        Inc. and Michael Dowling*