**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DANIEL ARBEENY, as the Administrator of the
Estate of NORMAN ARBEENY (deceased),
individually and on behalf of others, and SEAN S.
NEWMAN, as the Administrator of the Estates of
MICHAEL J. NEWMAN (deceased) and
DOLORES D. NEWMAN (deceased),
individually and on behalf of others,

                Plaintiffs,

       v.

ANDREW M. CUOMO, MELISSA DEROSA,
HOWARD A. ZUCKER, M.D., GREATER NEW
YORK HOSPITAL ASSOCIATION, KENNETH
RASKE, NORTHWELL HEALTH, INC.,
MICHAEL DOWLING, and JOHN DOES A-Z,

                Defendants.

22-CV-2336 (LDH) (LB)
23-CV-2391 (LDH) (ARL)

Date of Service:
November 17, 2023

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNOR ANDREW M. CUOMO'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

STANDARD OF REVIEW ................................................................................... 6

ARGUMENT ................................................................................................... 6

I.    Plaintiffs Fail to State a Plausible Federal Claim ................................... 6

    A.    Plaintiffs Fail to Plead Personal Involvement by Governor Cuomo, as Required Under § 1983 and § 1985 ..................................... 6

    B.    Plaintiffs Substantive § 1983 Claims (Count One) Fail on Their Merits ............................................................................................ 8

        1.    Plaintiffs Have No Claim Under the FNHRA ............................... 9

        2.    The State-Created Danger Doctrine Clearly Does Not Apply ................................................................................... 9

    C.    Count Two: Plaintiffs Have Not Pled A Conspiracy under 42 U.S.C. § 1983 .............................................................................. 11

    D.    Count Three: Plaintiffs Have Not Pled A Conspiracy under 42 U.S.C. § 1985 .............................................................................. 13

II.   Plaintiffs' State-Law Claim (COUNT FOUR) Fails as a Matter of Law ............ 14

    A.    The State Law Claim is Barred as to Plaintiff Newman ......................... 14

    B.    Plaintiffs Have Not Pled the Required Elements of the Wrongful Death Statute ................................................................................ 15

III.  Plaintiffs Fail to Plead that the Advisories were the Proximate Cause of Decedents' Deaths ...................................................................... 15

IV.   Governor Cuomo Is Entitled to Qualified Immunity on All Claims ................... 17

    A.    Plaintiffs Have Not Alleged Any Clearly Established Right.................. 19

        1.    The FNHRA ............................................................................. 20

        2.    Rights to Life and Bodily Integrity.......................................... 22

        3.    Rights to "Safe Conditions" and to Be Free from "Cruel, Unhuman, or Degrading Treatment" ............................................ 22

    B.    Governor Cuomo Was Not Personally Involved in any Violation of a Clearly Established Right ................................................................ 23

    C.    Governor Cuomo's Actions Were Reasonable And There Is No Basis To Find Otherwise ......................................................................... 23

CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. N.Y.C. Housing Auth.*, 2012 WL 4794590 (S.D.N.Y. Sept. 11, 2012) ........................... 10

*Alwan v. City of New York*, 311 F. Supp. 3d 570 (E.D.N.Y. 2018) ................................................ 9

*ames v. Gage*, No. 15-CV-106 (KMK), 2019 WL 6251364 (S.D.N.Y. Nov. 21, 2019) ............. 22

*Aretakis v. Durivage*, 07-CV-1273, 2009 WL 249781 (N.D.N.Y. Feb. 3, 2009) ....................... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 6, 23

*Bastian v. Lamont*, No. 3:21-CV-01249 (JCH), 2022 WL 2477863 (D. Conn. July 6, 2022) ..... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 6

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008) ............................................................ 10

*Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996) ..................................................................... 7

*Brooks v. Cnty. of Nassau*, 54 F. Supp. 3d 254 (E.D.N.Y. 2014) ................................................ 13

*Brown v. City of New York*, 786 F. App'x 289 (2d Cir. 2019) ....................................................... 22

*Carmichael v. City of New York*, 34 F. Supp. 3d 252 (E.D.N.Y. 2014) ....................................... 16

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 (S.D.N.Y. 2013) ............................. 15

*Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002) ............................................................ 4

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ................................................................... 22

*Chong v. New York City Transit Auth.*, 83 A.D.2d 546 (2d Dep't 1981) .................................... 15

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 324 (2d Cir 2002) .................................................... 11

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985) .......................................... 13

*Coakley v. Jaffe*, 49 F. Supp. 2d 615 (S.D.N.Y. 1999) ............................................................... 20

*Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84 (2d Cir. 2003) ...................................... 18

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................................................ 10

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 ...................... 9, 21

*DiBlasio v. Novello*, 413 F. App'x 352 (2d Cir. 2011) ................................................................ 18

*Doe v. Cornell Univ.*, 3:19-cv-1189, 2020 WL 2574707 (N.D.N.Y. May 21, 2020) ................... 14

*Doninger v. Niehoff*, 642 F.3d 334 (2d Cir. 2011) ..................................................................... 19

*Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132 (2d Cir. 2018) ...................... 6

*Est. of Mauricio Jaquez v. Flores*, No. 10 CIV. 2881 (KBF), 2016 WL 1084145 (S.D.N.Y. Mar. 17, 2016) .......................................................................................................... 18

*Fishman v. Daines*, 743 F. Supp. 2d 127 (E.D.N.Y. 2010) ......................................................... 20

*Geller v. Cuomo*, 476 F. Supp. 3d 1 (S.D.N.Y. 2020) ................................................................. 24

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013) .................................................. 19

*Gyadu v. Hartford Ins. Co.*, 197 F.3d 590 (2d Cir. 1999) ............................................................ 14

*Hargroves v. City of New York*, 03-CV-1668 (RRM) (VMS), 2014 WL 1271024 (E.D.N.Y. Mar. 26, 2014) ........................................................................................................ 18

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................................................ 17

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,* 599 U.S. 171 (2023) ........................... 20, 21

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ...................................................................................... 23

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) ............................................................................... 24

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) ................................................................................. 7

*Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ................................................................................. 17

*Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020) ............................................................................... 19

*Karsjens v. Jesson*, 6 F. Supp. 3d 916 (D. Minn. 2014) ................................................................ 22

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ............................................................ 6

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) .............................................. 17

*LaRock v. Albany Cnty. Nursing Home*, 19-CV-604, 2020 WL 1530792 (N.D.N.Y. Mar. 31, 2020) .......................................................................................................................... 10

*Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174 (2d Cir. 2020) .................................... 19

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007) ................................................... 10, 11, 20, 25

*Luke's Catering Serv., LLC v. Cuomo*, 485 F. Supp. 3d 369 (W.D.N.Y. 2020) ......................... 24

*Mauro v. Cuomo*, 21-CV-1165 (HG) (ARL), 2023 WL 2403482 (E.D.N.Y. Mar. 8, 2023) 8, 18, 21, 23

*Morpurgo v. Incorporated Village of Sag Harbor,* 697 F. Supp. 2d 309 (E.D.N.Y. 2010) ......... 12

*Mullenix v. Luna*, 577 U.S. 7 (2015) .................................................................................................. 19

*Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336 (S.D.N.Y. 2005) ............ 6

*Pagan v. City of New York*, 15-CV-5825 (LDH) (RLM), 2019 WL 8128482 (E.D.N.Y. Mar. 28, 2019) ................................................................................................................... 15

*Page v. Cuomo*, 478 F. Supp. 3d 355 (N.D.N.Y. 2020) ................................................................ 24

*Pollnow v. Glennon*, 757 F.2d 496 (2d Cir.1985) ........................................................................... 20

*Powell v. Workmen's Comp. Bd. of State of N. Y.*, 327 F.2d 131 (2d Cir. 1964) .......................... 14

*Powers v. Karen*, 768 F. Supp. 46 (E.D.N.Y. 1991), *aff'd*, 963 F.2d 1522 (2d Cir. 1992) ............ 8

*Razzano v. Cnty. of Nassau*, 599 F. Supp. 2d 345 (E.D.N.Y. 2009) ............................................ 11

*S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) ....................................... 24

*Sant v. Stephens*, 821 F. App'x 42 (2d Cir. 2020) .............................................................................. 7

*Santiago v. Brandt*, No. 05-CV-32S, 2011 WL 1232982 (W.D.N.Y. Mar. 30, 2011) ................ 22

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) ................................................................. 7

iii

*Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127 (2d Cir. 2013) ......................... 23

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) ................................................ 7, 23

*United States v. Walton*, 473 F. Supp. 3d 215 (W.D.N.Y. 2020) ................................. 23

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ........................ 6

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016) .......................................................... 8

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ........................................................... 21

*Washington v. Gonyea*, 731 F.3d 143 (2d Cir. 2013) ................................................ 21

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) .......................................................... 14

**Statutes**

28 U.S.C. § 1350 ........................................................................................................ 22

42 U.S.C. § 1396r ......................................................................................... 9, 19, 20, 21

N.Y. E.P.T.L. § 5-4.1 .................................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 6

**Regulations**

42 C.F.R. §§ 483.10, 483.24, and 483.80 .................................................................... 20

**Other Authorities**

Alex M. Azar II, *Determination That A Public Health Emergency Exists*, U.S. Dep't of Health and Human Servs. (Jan. 31, 2020), https://aspr.hhs.gov/legal/PHE/Pages/2019-nCoV.aspx#:~:text=Azar%20II%2C%20Secretary%20of%20Health,January%2027%2C%202020%2C%20nationwide .......... 2

Andrew Cuomo, Aᴍᴇʀɪᴄᴀɴ Cʀɪsɪs: Lᴇᴀᴅᴇʀsʜɪᴘ Lᴇssᴏɴs ғʀᴏᴍ ᴛʜᴇ COVID-19 Pᴀɴᴅᴇᴍɪᴄ (2020) ................................................................................................ 5

Andrew Jacobs et al., *'At War With No Ammo': Doctors Say Shortage of Protective Gear Is Dire*, N.Y. Tɪᴍᴇs (Mar. 19, 2020), https://www.nytimes.com/2020/03/19/health/coronavirus-masks-shortage.html .................. 2

CMS, Gᴜɪᴅᴀɴᴄᴇ ғᴏʀ Iɴғᴇᴄᴛɪᴏɴ Cᴏɴᴛʀᴏʟ ᴀɴᴅ Pʀᴇᴠᴇɴᴛɪᴏɴ ᴏғ Cᴏʀᴏɴᴀᴠɪʀᴜs Dɪsᴇᴀsᴇ 2019 (COVID-19) ɪɴ Nᴜʀsɪɴɢ Hᴏᴍᴇs (REVISED) (Mar. 9, 2020), https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf ............................................... 4

Lydia Ramsey Pflanzer & Jeremy Berke, *The Scary Things that this Virus Can Do: Doctors Across NYC Share the Harrowing Reality of Caring for Oxygen-Starved Coronavirus Patients as Equipment Runs Short*, BᴜsɪɴᴇssIɴsɪᴅᴇʀ.ᴄᴏᴍ (Apr. 4, 2020), https://www.businessinsider.com/nyc-hospitals-arefilled-with-coronavirus-patients-shortages-loom-2020-4 ........................................................ 2

Defendant former Governor Andrew M. Cuomo ("Governor Cuomo"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Second Amended Complaint.[1]

## PRELIMINARY STATEMENT

This action stems from a series of actions taken by the State of New York and its officials to combat an unprecedented public health emergency that, notwithstanding those efforts, resulted in the tragic loss of many New Yorkers. As a result of the COVID-19 pandemic, New York state officials took steps to protect New Yorkers and ensure that the state's healthcare systems would be able to bear the enormous weight of the effects from the rapidly spreading virus. One such step was the issuance of guidance to nursing homes and adult care facilities that enabled hospitals to transfer recovered COVID patients to nursing facilities that could care for them, while ensuring that hospitals had the staffing and capacity to care for patients with more acute care needs. Plaintiffs now make conclusory claims that those Advisories—which were guidance to nursing home facilities at a critically early time in the COVID crisis—are to blame for their parents' contracting COVID and passing away. Those Advisories do not give rise to any legal claim against Governor Cuomo or any other New York state official, and the allegations in the Second Amended Complaint must be dismissed as a matter of law.

**First,** Plaintiffs do not plead a plausible federal claim because they do not, and cannot, allege that Governor Cuomo had any personal involvement in Decedent's treatment or care. **Second**, Plaintiffs fail to plead any constitutional violation by Governor Cuomo, either under the FNHRA, or the state-created danger doctrine. **Third**, there is no plausible conspiracy amongst

---

[1]    We incorporate by reference and rely on the arguments made by the other individual Defendants in their Motions to Dismiss to the extent those arguments apply to Governor Cuomo's motion.

Defendants under either § 1983 or § 1985, nor do Plaintiffs allege an overt act by Governor Cuomo in furtherance of that conspiracy. **Fourth**, Plaintiffs' wrongful death claim is time-barred as against Plaintiff Sean Newman, and as for both Plaintiffs, the Second Amended Complaint does not plead the requisite elements of the claim. **Fifth**, there are no facts supporting the inference that Governor Cuomo's actions were the proximate cause of Decedents' injuries, as all four claims require. **Sixth** and finally, Governor Cuomo is entitled to qualified immunity on all claims.

## STATEMENT OF FACTS

New York City recorded its first positive case of COVID-19 on February 29, 2020—a mere month after the U.S. Department of Health and Human Services ("HHS") had issued a declaration of a nationwide state of emergency.[2] At the outset, states and healthcare centers were faced with immediate shortages—in personal protective equipment, ventilator supply, and ICU and hospital beds, as cases rose exponentially.[3] As the virus spread rapidly in the spring of 2020, New York state officials had to act quickly and decisively, particularly as fears worsened that the state's hospital system could become overwhelmed by the virus and collapse entirely. In an effort to avoid such a disaster, and after consulting with public health experts and with healthcare professionals, the New York Department of Health ("DOH") released the following advisories: (1) a March 25, 2020 "Advisory: Hospital Discharges and Admissions to Nursing Homes" to "Nursing Home Administrators, Directors of Nursing, Directors of Social Work, and Hospital Discharge Planners";

---

[2]      Alex M. Azar II, *Determination That A Public Health Emergency Exists*, U.S. Dep't of Health and Human Servs. (Jan. 31, 2020), https://aspr.hhs.gov/legal/PHE/Pages/2019-nCoV.aspx#:~:text=Azar%20II%2C%20Secretary%20of%20Health,January%2027%2C%202020%2C%20nationwide.

[3]      *See, e.g.*, Andrew Jacobs et al., *'At War With No Ammo': Doctors Say Shortage of Protective Gear Is Dire*, N.Y. TIMES (Mar. 19, 2020), https://www.nytimes.com/2020/03/19/health/coronavirus-masks-shortage.html; Lydia Ramsey Pflanzer & Jeremy Berke, *The Scary Things that this Virus Can Do: Doctors Across NYC Share the Harrowing Reality of Caring for Oxygen-Starved Coronavirus Patients as Equipment Runs Short*, BUSINESSINSIDER.COM (Apr. 4, 2020), https://www.businessinsider.com/nyc-hospitals-arefilled-with-coronavirus-patients-shortages-loom-2020-4.

and (2) an April 7, 2020 "Advisory: Hospital Discharges and Admissions to ACFs" (collectively with the March 25, 2020 Advisory, the "Advisories"), to "Adult Care Facilities (ACF) Administrators and Hospital Discharge Planners." *See* Declaration of Rita M. Glavin dated November 17, 2023 ("Glavin Decl."), Exs. 1, 2. The March 25 Advisory stated, in relevant part, that, given the presence of COVID-19 in "multiple communities" and the "urgent need to expand hospital capacity in New York State to be able to meet the demand for patients with COVID-19 requiring acute care," "[n]o resident shall be denied re-admission or admission to the NH solely based on a confirmed or suspected diagnosis of COVID-19. NHs are prohibited from requiring a hospitalized resident who is determined medically stable to be tested for COVID-19 prior to admission or readmission." *Id.*, Ex. 1. The March 25, 2020 Advisory concluded: "As always, standard precautions must be maintained, and environmental cleaning made a priority, during this public health emergency." *Id.*, Ex. 2. Similarly, the April 7, 2020 Advisory instructed that "[n]o resident shall be denied re-admission or admission to the ACF solely based on a confirmed or suspected diagnosis of COVID-19. Any denial of admission or re-admission must be based on the ACF's inability to provide the level of care required by the prospective resident, pursuant to the hospital's discharge instructions and based on the ACF's current licensure or certification. Additionally, ACFs are prohibited from requiring a hospitalized resident, who is determined medically stable, to be tested for COVID-19 prior to admission or readmission." *Id.*

The purpose of the Advisories was clear: to send individuals who had recovered from the virus and who were no longer contagious back to facilities who could provide them with adequate care and to free up hospital beds for patients with more acute care needs. *See, e.g.*, Glavin Decl.,

Ex. 3 (DOH Report dated July 6, 2020[4]) at 19 (stating that "people admitted from hospitals to nursing homes were most likely not contagious"). This approach was also consistent with then-current guidance from the CDC and the U.S. Centers for Medicare & Medicaid Services, which "stated that nursing homes should accept residents with COVID-19 as long as they can use transmission-based precautions."[5]

Plaintiffs allege that, in implementing the Advisories, Defendants "ignored" "multiple viable alternatives," SAC ¶¶ 81–82, and assert that Governor Cuomo had "admitted" to not needing the extra nursing home beds, stating:

> "Governor Cuomo openly admitted in his book[] that, 'we were never in a dire situation.[6] The state always had additional beds available all across the state. Therefore the critics' premise that we 'forced' nursing homes to take COVID-positive people is patently false and illogical because we always had alternative available beds throughout the state. We never 'needed' nursing homes beds."

*Id.* ¶ 74. Plaintiffs excluded critical context in that very same paragraph of Governor Cuomo's book, in which he states:

> The context here is very important. Early on in the crisis, our main fear was that the hospitals would be overwhelmed, and collapse. All health professionals agreed that if that situation developed, we would need to free up hospital beds for people with critical needs. **As it turned out, our successful efforts to reduce the viral transmission and create additional beds meant that we were never in that dire situation.**

---

[4]    On a motion to dismiss, the Court may properly consider "any statements or documents incorporated in [the complaint] by reference." *See Chambers v. Time Warner*, 282 F.3d 147, 152–53 (2d Cir. 2002). The SAC explicitly relies upon and incorporates by reference the Advisories, the DOH Report, and portions of Governor Cuomo's book, and those materials are therefore properly considered in connection with this motion. *See, e.g.*, SAC at 7–8 (citing and quoting Advisories); *id.* ¶¶ 50–51, 100–14 (Advisories); *id.* ¶¶ 121–22 (DOH Report); *id.* ¶¶ 74, 78–79, 136 (book).

[5]    *See* Glavin Decl., Ex. 3 at 16 (citing CMS, GUIDANCE FOR INFECTION CONTROL AND PREVENTION OF CORONAVIRUS DISEASE 2019 (COVID-19) IN NURSING HOMES (REVISED) 5 (Mar. 9, 2020), https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf ("Nursing homes should admit any individuals that they would normally admit to their facility, including individuals from hospitals where a case of COVID-19 was/is present").

[6]    Note that Plaintiffs misquote this sentence to better fit their prescribed narrative, stating that "we were never in *a* dire situation," instead of "never in *that* dire situation." *Id.* ¶ 74.

Andrew Cuomo, AMERICAN CRISIS: LEADERSHIP LESSONS FROM THE COVID-19 PANDEMIC 228–229 (2020) (emphasis added). As the curve flattened and hospital overwhelm became less likely, the Advisories were withdrawn on May 10, 2020.

The instant suit centers on three former residents of nursing homes and adult care facilities during the effective period of the Advisories: Norman Arbeeny, Michael Newman, and Dolores Newman (collectively, "Decedents"). According to the SAC, Decedents each contracted COVID, died from the disease, and are represented in this action by their children, who administer their respective estates. SAC ¶¶ 1–9. Norman Arbeeny was admitted to Cobble Hill Health Center on March 20, 2020, for physical rehabilitation, and was released on April 8, 2020. *Id.* ¶¶ 23, 25. Following his release, Norman was subjected to a constantly rotating shift of nursing care professionals and attending healthcare staff, and was visited by family members. *Id.* ¶ 27. Norman tested positive for COVID shortly before he passed away on April 21, 2020, two weeks after he had left the nursing facility. *See id.* ¶¶ 29–31. Michael Newman was admitted to Grandell Rehabilitation and Nursing Center on February 7, 2020, presenting with declining dementia and other health concerns. *See id.* ¶¶ 34–35. He began exhibiting COVID symptoms on March 29, 2020, four days after the nursing home Advisory was announced, and passed away the same day. *See id.* ¶ 37. Finally, Dolores Newman was admitted to the Long Island Living Center on December 26, 2019, and began exhibiting COVID symptoms on April 10, 2020, three days after the adult care facility Advisory was announced. *See id.* ¶¶ 41, 43. She was transported to a hospital the following day, and passed away on April 14, 2020. *Id.* ¶¶ 43–44.

The SAC makes conclusory, unsupported and speculative claims that each of Decedents contracted and died of COVID as a direct result of the Advisories, and that this injury purportedly gives rise to four causes of action: (1) alleged deprivation of Decedents' constitutional and

statutory rights pursuant to 42 U.S.C. § 1983; (2) conspiracy to violate Decedents' civil rights, pursuant to 42 U.S.C. § 1983; (3) conspiracy to deprive Decedents of equal protection rights, pursuant to 42 U.S.C. § 1985(3); and (4) wrongful death under N.Y. E.P.T.L. § 5-4.1.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion dismiss, nor do "legal conclusions masquerading as factual conclusions." *See Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006); *cf. Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336, 339-40 (S.D.N.Y. 2005) (striking case law from complaint as "unnecessary and inappropriate").

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE FEDERAL CLAIM

#### A. Plaintiffs Fail to Plead Personal Involvement by Governor Cuomo, as Required Under § 1983 and § 1985

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*, 579 F.3d 176, 184

---

[7]      Governor Cuomo denies Plaintiffs' claims against him, but the legal standard governing this motion to dismiss requires that Plaintiffs' factual allegations be accepted as true. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015).

(2d Cir. 2009); *see Sant v. Stephens*, 821 F. App'x 42, 45 (2d Cir. 2020) (same under § 1985). Allegations that a defendant "held a high position of authority," *see Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted), or of *respondeat superior* liability, *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973), do not suffice. A plaintiff alleging a § 1983 or § 1985 claim must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiffs' federal claims fail because they have not pled (nor could they) that Governor Cuomo had any personal involvement in or awareness of Decedents' placement, treatment, or the relevant facilities' infection protocols and procedures. The SAC's allegations regarding Governor Cuomo concern, broadly, Governor Cuomo's and New York State's efforts to combat COVID, even going so far as to detail Governor Cuomo's public schedules for March and April 2020, including meetings and communications with public health experts and healthcare professionals. *See* SAC ¶¶ 45–47. And yet, even after those dozens of paragraphs, the SAC pleads not a single allegation that: Governor Cuomo was involved in or had any contact with any of the three facilities at which Decedents were housed; that Governor Cuomo had any awareness of Decedents' treatment or care; that Governor Cuomo had any awareness of each of the three facilities' infection control protocols, procedures for separating COVID-positive patients; or even whether each facility had or had not yet had a positive case of the virus, or accepted any patients pursuant to the Advisories.

And notwithstanding Plaintiffs' focus on Governor Cuomo's involvement in issuing the Advisories, a Court in this district has made plain that involvement in issuing Executive Orders and Advisories like the ones at issue here does not constitute personal involvement for purposes of § 1983. *See Mauro v. Cuomo*, 21-CV-1165 (HG) (ARL), 2023 WL 2403482, at *5 (E.D.N.Y.

Mar. 8, 2023). In *Mauro*, Judge Hector Gonzalez dismissed claims for violations of the Federal Nursing Home Reform Act ("FNHRA") and various constitutional deprivations resulting from DOH advisories restricting nursing home visitation during COVID. *Id*. There, the Court found that "Plaintiffs have insufficiently alleged that Defendant Cuomo was personally involved with specifically restricting Plaintiff['s] access to family visitation. While it is true that Defendant Cuomo participated in issuing executive orders and guidance regarding the COVID-19 pandemic, [the nursing home] was responsible for enforcing those mandates and had discretion in determining whether Plaintiffs qualified for an exception under said guidance." *Id.* Like in *Mauro*, the SAC does not specifically allege that Governor Cuomo had any kind of supervisory authority over the relevant facilities or their staff, instead relying on his status as then-Governor. This is insufficient. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."); *Mauro*, 2023 WL 2403482, at *5. Given Plaintiffs' failure to allege specific personal involvement by Governor Cuomo that would give rise to liability in this action, the federal claims in Counts One through Three should be dismissed.[8]

### B.  Plaintiffs Substantive § 1983 Claims (Count One) Fail on Their Merits

Even assuming *arguendo* that Governor Cuomo had any personal involvement, Plaintiffs have not plausibly alleged any violation of federal[9] constitutional or statutory law.

---

[8]     Similarly, Governor Cuomo's lack of personal involvement in Decedent's treatment or care or in the conditions of their respective facilities is also fatal to the state law claim. *See supra* Section I.A.

[9]     Section 1983 plainly applies only to *federal* constitutional and statutory law—it does not provide a cause of action for state constitutional violations or state law violations. *See infra* n.11. However, even if it did, Decedents' state constitutional and statutory rights were not violated. First, criminal statutes like the New York Penal Law do not give rise to a private right of action. *See Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), *aff'd*, 963 F.2d 1522 (2d Cir. 1992). And even if they were privately actionable, Governor Cuomo is not a "caregiver," as defined in N.Y. Penal Law § 260.30(1), and the SAC does not allege that Governor Cuomo physically assaulted any of the Decedents, or had any physical contact with them whatsoever. Second, any claims under provisions of the state constitution that parallel federal constitutional protections must be dismissed, *see Alwan v. City of New York*, 311 F. Supp. 3d 570, 586

### 1. Plaintiffs Have No Claim Under the FNHRA

Plaintiffs have no cause of action against Governor Cuomo, a state official uninvolved in Decedents' care, under the FNHRA. Each of the provisions cited by Plaintiffs is aimed at conduct *by a nursing home*. Governor Cuomo is not a nursing home owner or operator, nor do Plaintiffs allege that he had any control over or any of the state's nursing homes, or that he actively participated in the enforcement of any DOH Advisories against any nursing homes. This plainly precludes recovery under the FNHRA. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (rejecting theory that a plaintiff could recover against individual for rights conferred by spending clause statute); *see infra* Section IV.C.1.

And even if Plaintiffs did not have to confront the supervisory liability issue, they have not plausibly alleged how Decedents' FNHRA rights were violated at all. Neither FNHRA's provisions nor the corresponding federal regulations give rise to a statutory right to be free from infection, or to be cured of a then-untreatable disease, or that contraction of a virus constitutes a violation of all statutory rights. Each of the enumerated sections of the statute involves some action that the nursing home must take with respect to its environment of residents and protocols surrounding their care. *See* 42 U.S.C. § 1396r(b), (d). Nowhere do Plaintiffs allege that the relevant nursing homes or adult care facilities did not have such protocols or procedures in place. Accordingly, Plaintiffs fail to state a claim under the FNHRA as a matter of law.

### 2. The State-Created Danger Doctrine Clearly Does Not Apply

Plaintiffs' attempt to impose liability under § 1983 via the state-created danger doctrine also fails because neither of the doctrine's two conditions are met. *See* SAC ¶¶ 221–31. First, the

---

(E.D.N.Y. 2018), and Plaintiffs can show no violation of § 16 of the New York State Constitution, which simply states that the right to recover for wrongful death "shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation." Plaintiffs have not claimed that Governor Cuomo abrogated the right to bring such an action, nor that he has imposed a statutory limitation on recovery.

official must engage in an affirmative act "that creates an opportunity for a third party to harm a victim (or increases the risk of such harm)," *Lombardi v. Whitman*, 485 F.3d 73, 80 (2d Cir. 2007), which must extend beyond mere negligence. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Second, such action must "shock the conscience." *Lombardi*, 485 F.3d at 81.

On the first factor, failure to protect Decedents or putative class members from environmental health risks does not rise to the level of a due process violation, even if Plaintiffs allege that Defendants were aware of the risks of the Advisory and somehow misrepresented those risks to the public. *Id.* at 80–81. Indeed, cases applying the state-created danger doctrine nearly always involve allegations of active violence by a third-party—not something as attenuated as environmental risks. *Cf. Allen v. N.Y.C. Housing Auth.*, 2012 WL 4794590, at *8 (S.D.N.Y. Sept. 11, 2012) (declining to extend state-created danger doctrine to require school officials to provide students with a safe environment); *Lombardi*, 485 F.3d at 80 (same regarding EPA's issuance of allegedly misleading press releases in the wake of 9/11, where plaintiffs "appear to cast environmental conditions as the [third-party] wrongdoer"). The Court in *Lombardi* affirmed the dismissal of the environmental-risk claims, counseling that substantive due process liability should not be allowed to inhibit or control policy decisions of government agencies, regardless of hindsight. *Id.* at 84. Similarly, *Benzman v. Whitman* also declined to apply the doctrine to claims "based on a senior official's public statements that offered assurances of environmental safety." 523 F.3d 119, 127 (2d Cir. 2008). A court in this Circuit has even rejected the application of the doctrine in the nursing home context, stating that there is no state-created danger where "the harm suffered is not alleged to be the result of some private assailant's conduct," and where the alleged affirmative acts were the behavior of individual government officials. *LaRock v. Albany Cnty. Nursing Home*, 19-CV-604, 2020 WL 1530792, at *5 (N.D.N.Y. Mar. 31, 2020).

And on the second factor, a "choice made by an executive official between or among the harms risked by the available options is not conscience-shocking merely because for some persons it resulted in grave consequences" that could have been avoided under different circumstances, or even where they "contemplate some likelihood of bodily harm." *Lombardi*, 485 F.3d at 85. This is particularly true in cases where "defendants [are] required to make decisions using rapidly changing information about the ramifications of unprecedented events in coordination with multiple federal agencies and local agencies and governments." *Id.* at 82. A court must take into account the "relative magnitude of . . . risks" of the alleged misconduct against the risks of *not* acting, especially where inaction or a different course of action "can also result in bodily harm and loss of life." *Id.* at 85. Thus, the SAC's § 1983 claim under this doctrine fails as a matter of law.

### C.  Count Two: Plaintiffs Have Not Pled A Conspiracy under 42 U.S.C. § 1983

A § 1983 conspiracy claim requires a plaintiff to show: "(1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 324, 324–25 (2d Cir 2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Id.* at 325; *see also Razzano v. Cnty. of Nassau*, 599 F. Supp. 2d 345, 353–54 (E.D.N.Y. 2009) (dismissing conspiracy claim based on vague allegations that defendants "acted in concert").

Here, the extent of the allegations in support of the alleged "conspiracy" between Governor Cuomo and the other Defendants consist of claims that the hospital-related Defendants' "political, lobbying, legislative drafting" activities "constituted a corrupt conspiracy," SAC ¶ 223; that the "hospital lobby literally owned Governor Cuomo," *id.* ¶ 55, and that various Defendants participated in calls with Governor Cuomo in "large-group conference calls and smaller meetings"

11

during March and April 2020, as part of Governor Cuomo's consultation with hospital officials at the outset of the pandemic, *id.* ¶ 47. At most, these allegations show state officials consulting with healthcare entities during an unprecedented public health emergency in order to determine how best to respond to the crisis. At no point do Plaintiffs plausibly allege (and they cannot) that Defendants were meeting for the purpose of conspiring "to inflict an unconstitutional injury"— and even Plaintiffs' own citations to statements by the healthcare Defendants belie such a conclusion. *See id.* ¶¶ 54–55, 97–99 (claiming that Defendants engaged in "conspiracy" for purposes of financial gain). Courts regularly dismiss § 1983 conspiracy claims where a plaintiff fails to plausibly allege a conspiracy, notwithstanding a plaintiff's use of boilerplate language like "acting in concert" or pleading that defendants' "interests were aligned." *See, e.g.*, *Morpurgo v. Incorporated Village of Sag Harbor,* 697 F. Supp. 2d 309 (E.D.N.Y. 2010) (no "meeting of the minds" where co-owner "merely speculated" that interests of private defendants were aligned with respect to her property and that those common interests evidenced concerted action by defendants). That result should control here, where Plaintiffs blandly and conclusorily allege that Defendants "act[ed] individually and in concert," SAC ¶¶ 56, 58; "there was an agreement," *id.* ¶ 233; that Defendants have "individually and collectively conspired" to violate Decedents' rights, *id.* ¶¶ 235, 239; and that Defendants "focused upon the risk of unconstitutional conduct" (without explaining precisely what that means), *id.* ¶¶ 83, 101, 110, 224. This boilerplate language does not state a conspiracy claim.

Further, Plaintiffs do not allege what "overt act" was committed by Governor Cuomo in furtherance of the alleged "conspiracy." They point to the Advisories, but also state, elsewhere, that the Advisories were implemented by the Department of Health—not Governor Cuomo. *See*

SAC ¶ 53 (citing to Wall Street Journal article, stating that Advisories were "from the state's health department," and were approved by "Mr. Cuomo's team").

### D.  Count Three: Plaintiffs Have Not Pled A Conspiracy under 42 U.S.C. § 1985

"To state a § 1985(3) conspiracy claim, a plaintiff must plead (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *See Brooks v. Cnty. of Nassau*, 54 F. Supp. 3d 254, 258–59 (E.D.N.Y. 2014) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993)). Furthermore, the conspiracy must be motivated by racial or other class-based "discriminatory animus." *Id.*

Section 1985(3)'s requirements are even more exacting than those under § 1983: here, the conspiracy alleged must be for the purpose of depriving persons of "equal protection of the laws." The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Nowhere have Plaintiffs alleged that Decedents have been treated differently than others similar situated— nor can they, as the SAC specifically purports to assert claims on behalf of "*all individuals who were New York nursing home residents and/or assisted living facility residents where a COVID positive patient was admitted*" after the Advisories. *See, e.g.*, SAC ¶ 10. Plaintiffs do not allege that nursing home residents, on whose behalf they purport to bring these claims, were treated differently than any others who were similarly situated. And beyond this fatal flaw, the § 1985 claim suffers from the same failure to plausibly allege a conspiracy among Defendants, or an overt act in furtherance of that conspiracy, as Count Two. *See supra*, Section I.C.

13

Moreover, Plaintiffs have not and cannot allege a protected class to which Decedents belonged, which is fatal to their claim. *See Powell v. Workmen's Comp. Bd. of State of N. Y.*, 327 F.2d 131, 137 (2d Cir. 1964). And even if Plaintiffs had pled a cognizable protected class, this claim still fails, because Plaintiffs have not alleged that Defendants were motivated by Plaintiffs' protected class, or any "meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end" sufficient to infer a conspiracy existed. *See Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (citation omitted). To the contrary, Plaintiffs allege that the alleged conspiracy was motivated by financial gain, which precludes recovery under § 1985(3)'s class-based animus requirement. *See Doe v. Cornell Univ.*, 3:19-cv-1189, 2020 WL 2574707, at *4 (N.D.N.Y. May 21, 2020), *aff'd sub nom*; *Doe v. Fenchel*, 837 F. App'x 67 (2d Cir. 2021) (where a plaintiff "makes clear" that defendant's "motivation to participate in the alleged conspiracy was financial, rather than being based on any alleged discriminatory animus," § 1985(3) claim must be dismissed). Conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights, like those contained in the SAC, are insufficient, and this claim should be dismissed. *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999).

## II.    PLAINTIFFS' STATE-LAW CLAIM (COUNT FOUR) FAILS AS A MATTER OF LAW

### A.    The State Law Claim is Barred as to Plaintiff Newman

Per the language of the statute, an action under N.Y. E.P.T.L. § 5-4.1 "must be commenced within two years after the decedent's death. N.Y. E.P.T.L. § 5-4.1(1). While Mr. Arbeeny previously pled this claim, Mr. Newman did not—he raises the cause of action for the first time in the SAC, filed on August 24, 2023, more than three years after his parents passed on March 29, 2020, and April 24, 2020, well beyond the two-year limitations period. *See* SAC ¶¶ 37, 44. And even if this Court deems the claim to relate back to Mr. Newman's original complaint, that does

14

not save the claim, as the original March 28, 2023 was filed just shy of three years from the dates of his parents' passing. As a result, this claim as to Plaintiff Sean Newman (and Decedents Dolores and Michael Newman) should be dismissed as untimely.

### B.  Plaintiffs Have Not Pled the Required Elements of the Wrongful Death Statute

For a wrongful death claim, Plaintiffs must plausibly allege that a "wrongful act, neglect or default of the defendant" caused the decedent's death, and that the decedent was "surviv[ed] by distributees who suffered pecuniary loss by reason of the death of decedent." *Chong v. New York City Transit Auth.*, 83 A.D.2d 546, 547 (2d Dep't 1981).

Plaintiffs have set forth no allegations (beyond unsupported conclusions and speculation) to show that a specific wrongful act by Governor Cuomo was the cause of Decedents' deaths. Indeed, as set forth *supra*, the SAC does not allege any personal involvement by Governor Cuomo in Plaintiffs' care. *See infra* Section III (lack of causation) and *supra* Section I.A (lack of personal involvement). Further, vague mentions of distributees—even mentioning that a decedent was survived by children—or pecuniary loss are not sufficient, and that failure to so plead is grounds for dismissal. *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013).

### III.    PLAINTIFFS FAIL TO PLEAD THAT THE ADVISORIES WERE THE PROXIMATE CAUSE OF DECEDENTS' DEATHS

All four of Plaintiffs claims require that Plaintiffs plead some causal connection between the alleged misconduct and the injury. *Pagan v. City of New York*, 15-CV-5825 (LDH) (RLM), 2019 WL 8128482, at *3 (E.D.N.Y. Mar. 28, 2019) (causation is "essential element" of § 1983 claims and New York wrongful death claim). "The proximate cause inquiry focuses on 'whether a cause is a substantial factor in bringing about the harm, or whether the cause is too remotely or insignificantly related to the harm to be a legal basis for liability.'" *Id.* at *3 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278–79 (2d Cir. 2003)). Here, the misconduct alleged by Plaintiffs is

the issuance of the Advisories. *See, e.g.*, SAC at 7–8. And the injury claimed is Decedents' contraction of COVID and subsequent death. *See id*. Plaintiffs cannot, and do not, plead a plausible causal connection between the Advisories and Decedents' injuries.

First, Plaintiffs do not even plead the most basic facts that could establish any causal steps between the Advisories and the injury, such as: (1) when and where each Decedent first tested positive for COVID; (2) when each of their respective nursing or adult care facilities had their first confirmed case of COVID; or (3) when each of their respective facilities took in their first patient from a hospital pursuant to the terms of the Advisories. Indeed, Plaintiffs do not allege that any of Decedent's respective facilities took in any patients pursuant to the Advisories *at all.*

Second, even if Plaintiffs were able to plead a constitutional violation, "[w]here the causal connection is 'too tenuous,' the constitutional deprivation is not the proximate cause of actual injury." *Carmichael v. City of New York*, 34 F. Supp. 3d 252, 268 (E.D.N.Y. 2014) (citations omitted). For each of the Decedents, Plaintiffs allegations support a contrary conclusion: the Advisories did not cause Decedents to contract COVID. For Mr. Arbeeny, the SAC alleges that he was released from the nursing facility on April 8, 2020, and did not test positive for COVID until *two weeks later*, on April 21, 2020. SAC ¶¶ 25, 31. While Plaintiffs acknowledge that asymptomatic spread was an underestimated source of infection at the outset of the pandemic, *id.* ¶ 101, they ignore the strong likelihood that such spread may have led to Mr. Arbeeny's infection through any number of individuals, including his constantly rotating roster of home health aides, visitors, and anyone with whom those individuals came into contact. *See* SAC ¶¶ 27–28 (Mr. Arbeeny retained 24-hour nursing care after his discharge, and was in contact with family and attending healthcare staff). With respect to Mr. and Mrs. Newman, there is an additional causation issue: they each were only present in their respective facilities for *four days* after the respective

16

directives were issued before either passing away of COVID or being transferred. *See* SAC ¶¶ 37 (Mr. Newman posthumously diagnosed with COVID after passing away on March 29, 2020), 43 (Mrs. Newman transferred to hospital on April 11, 2020). It is highly unlikely that, within four days of the respective Advisories being issued: each facility was able to establish procedures for complying with the Advisories; accepted at least one COVID-positive patient pursuant to the Advisories who was, somehow, still contagious; notwithstanding requirements that such patients be isolated from non-COVID-positive residents, that patient came into contact with the Newmans; and the Newmans then caught COVID and exhibited symptoms at a rate twice as fast as the understood incubation period for the disease. In this Circuit, a claim may be deemed implausible, and thus insufficiently pled, where there exist "alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

## IV.   GOVERNOR CUOMO IS ENTITLED TO QUALIFIED IMMUNITY ON ALL CLAIMS

Governor Cuomo is entitled to qualified immunity on both Plaintiffs' state and federal claims. It is well established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Similarly, New York law provides immunity to state actors on state-law claims unless "the officials' actions are undertaken in bad faith or without a reasonable basis." [10] *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006); *see also*

---

[10]   Plaintiffs' only allegation that Defendants acted in bad faith is a boilerplate recitation, SAC ¶ 227(b) ("Defendants' aforementioned course of conduct . . . was also . . . in fact motivated by bias, bad faith, and/or improper motive"); Plaintiffs plead no facts supporting this allegation. As a result, the analyses of state and federal qualified immunity are identical, as both rest on the reasonableness of Governor Cuomo's actions. *See Hargroves v. City of*

*Hargroves*, 2014 WL 1271024, at *3 (reasonableness analysis is coextensive under state and federal qualified immunity doctrines).

"[T]he doctrine of qualified immunity gives ample room for mistaken judgments. Indeed, the very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions. This is especially true when officials are forced to act quickly, such as in the context of a public health emergency." *DiBlasio v. Novello*, 413 F. App'x 352, 356 (2d Cir. 2011) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) (internal quotations omitted) (summary order). The doctrine has been applied frequently in the COVID context and in the wrongful death context. *See, e.g.*, *Bastian v. Lamont*, No. 3:21-CV-01249 (JCH), 2022 WL 2477863, at *7 n.8 (D. Conn. July 6, 2022) ("Other federal district courts have . . . [found] government officials entitled to qualified immunity for their responses to the COVID-19 pandemic") (collecting cases); *Mauro*, 2023 WL 2403482, at *5 (Governor Cuomo entitled to qualified immunity on nursing home advisories); *Est. of Mauricio Jaquez v. Flores*, No. 10 CIV. 2881 (KBF), 2016 WL 1084145, at *4 (S.D.N.Y. Mar. 17, 2016) (discussing qualified immunity on state law wrongful death claim). "The presumption in favor of finding qualified immunity is necessarily high, protecting all but the plainly incompetent or those who knowingly violate the law." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102 (2d Cir. 2003) (internal citation omitted).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional [or statutory] right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively

---

*New York*, 03-CV-1668 (RRM) (VMS), 2014 WL 1271024, at *3 (E.D.N.Y. Mar. 26, 2014) (where "plaintiffs do not argue that the individual officers acted in bad faith," analysis under federal and state law is identical).

reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). Here, Governor Cuomo is entitled to qualified immunity because the SAC has alleged no "clearly established" right that was violated, and even if it did, Governor Cuomo's actions were objectively reasonable.

### A. Plaintiffs Have Not Alleged Any Clearly Established Right

In determining whether a right is clearly established, courts consider: "whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). "In practice, this means that 'controlling authority' or 'a robust consensus of cases of persuasive authority' dictate the action at issue." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (citations omitted). Vague formulations of the "rights" at issue are inconsistent with what the qualified immunity doctrine requires: that the right "must be defined with specificity." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). "Indeed, [a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Jones,* 963 F.3d at 224. (quotations omitted).

Here, Plaintiffs have alleged a laundry list of "clearly established" rights that have been violated: (1) the FNHRA, 42 U.S.C. § 1396r, SAC ¶¶ 56, 181, 190–204; (2) rights to life and

bodily integrity, *id.* ¶¶ 173, 181, 209–220; and (3) rights to safe conditions and to be free from "cruel, unhuman, or degrading treatment," *id.* ¶¶ 181, 205–08.[11]

### 1. The FNHRA

Plaintiffs claim that Decedent possess clearly established rights under the following provisions of the FNHRA, SAC ¶ 56: 42 U.S.C. § 1396r(b)(1)(A) (quality of life); § 1396r(b)(4)(A)(i) (certain nursing and rehabilitative services); § 1396r(b)(2) (written plan of care); and § 1396r(d)(3) (infection control programs). Plaintiffs also cite to corresponding provisions of the Code of Federal Regulations[12] that expand upon the provisions of the FNHRA. *See, e.g.*, SAC ¶ 56; 42 C.F.R. §§ 483.10, 483.24, and 483.80.

Plaintiffs' claims under FNHRA lie in two sections of the statute: § 1396r(b), Requirements Relating to Provision of Services, and § 1396r(d), Requirements Relating to Administration and Other Matters. It is not clear that Plaintiffs even have a private right of action under these provisions, let alone that rights under them were clearly established. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, cited by Plaintiffs, *see* SAC ¶¶ 57, 203, is very specific, limiting its holding to the two rights at issue, both found in subsection (c) of § 1396r, labeled "Residents' Rights. *See* 599 U.S. 171 (2023) ("This case is about these particular provisions"). None of the

---

[11]     Plaintiffs also allege that Decedents' rights pursuant to the New York State Constitution and New York Penal Law §§ 260.32 and 260.34 were violated, SAC ¶¶ 58, 173, 214, but neither a violation of a state constitution nor of state statutes gives rise to a § 1983 claim. *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985) (violation of state law not cognizable under § 1983); *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628-29 (S.D.N.Y. 1999) (no private right of action under § 1983 for alleged violations of New York State Constitution).

        And to the extent that Plaintiffs are deemed to have alleged some deprivation result from purported incorrect reporting of nursing home fatality data, SAC ¶ 141–42, but do not specify under which claim this right is alleged. In any event, the Second Circuit is clear that it will not find liability in this context, because the "risk of such liability will tend to inhibit [] officials in making difficult decisions about how to disseminate information to the public in an environmental emergency." *Lombardi*, 485 F.3d at 84.

[12]     Federal regulations do not independently create enforceable rights under § 1983—they only serve to expound upon or clarify any rights granted by their corresponding statutes. *See Fishman v. Daines*, 743 F. Supp. 2d 127, 142–43 (E.D.N.Y. 2010) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)

provisions that Plaintiffs invoke fall in the same subsection as those discussed in *Talevski.* Instead, the sections cited by Plaintiffs require nursing facilities to, among other things, maintain certain policies and procedures, and provide residents with written plans of care. *See generally* § 1396r(b), (d). Furthermore, the doctrine of qualified immunity shields a defendant where "the right at issue was not clearly established by ***then existing precedent***." *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (emphasis added). Given that the Supreme Court had to opine on the issue to settle a dispute amongst the Circuits, a reasonable person could not have known whether the FNHRA established enforceable rights in 2020, when the Advisories were issued. *Cf. Mauro*, 2023 WL 2403482, at *4 (noting split amongst Second Circuit as to whether FNHRA created private right of action in March 2023).

Moreover, even if this Court were to find clearly established, actionable rights under the above statutes, such rights are only enforceable against the nursing homes themselves. The FNHRA was enacted pursuant to Congress's spending power, *Talevski*, 599 U.S. at 183, and spending power legislation is only enforceable against the party receiving federal funding. *See Davis*, 526 U.S. at 641-42 (declining to expand liability under Title IX to anyone beyond "receiving entity of federal funds"); *cf. Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (no cause of action against state officials in their individual capacities under spending clause legislation, "which allows the imposition of conditions, such as individual liability, only on those parties actually receiving the state funds."). This limitation is in line with the Supreme Court's requirement that a "receiving entity of federal funds [have] notice" of potential liability in order to permit damages actions against it. *See Davis*, 526 U.S. at 641–42. Governor Cuomo is not a recipient of federal funding, nor does the SAC so plead. As such, Plaintiffs do not have a viable § 1983 claim under these provisions.

21

### 2.  Rights to Life and Bodily Integrity

With regard to Plaintiffs' allegations regarding the rights to life and bodily integrity, SAC ¶¶ 209–220, Plaintiffs do not have a constitutional right (i) to seek or demand specific medical attention, *see James v. Gage*, No. 15-CV-106 (KMK), 2019 WL 6251364, at *6 (S.D.N.Y. Nov. 21, 2019), (ii) to "ideal" medical care, *Santiago v. Brandt*, No. 05-CV-32S, 2011 WL 1232982, at *4, n.1 (W.D.N.Y. Mar. 30, 2011), or (iii) to be cured from certain conditions, *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 933 n.23 (D. Minn. 2014). In that same vein, "[i]t is well-established that mere disagreement" over the proper care or treatment to be afforded a patient "does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

### 3.  Rights to "Safe Conditions" and to Be Free from "Cruel, Unhuman, or Degrading Treatment"

Plaintiffs also allege a right to "safe conditions" and, later, to be free from cruel, inhumane, or degrading treatment. SAC ¶¶ 205–08. But these rights, stemming from the Eighth Amendment, are only afforded to individuals ***in state custody or confinement***. *See Brown v. City of New York*, 786 F. App'x 289, 293 (2d Cir. 2019) (citing *Suffolk Parents of Handicapped Adults v. Wingate*, 101 F.3d 818, 823 (2d Cir. 1996) (no affirmative right to governmental aid except where "State takes a person into its custody and holds him there against his will"); *see also Aretakis v. Durivage*, 07-CV-1273, 2009 WL 249781, at *32 (N.D.N.Y. Feb. 3, 2009) (claim for "cruel and inhuman treatment" applies "when a person is confined after conviction"). Plaintiffs make no such allegations about state confinement here. Indeed, each of the cases cited by Plaintiffs regarding these "rights" either (i) involve individuals who have been committed to state institutions or incarcerated, or (ii) involve entirely different recovery schemes, like the Alien Tort Claims Act.[13]

---

[13]    The Alien Tort Claims Act provides a tort cause of action for non-U.S. citizens specifically (and only) for acts that violate treaties entered into by the United States or settled international law. *See* 28 U.S.C. § 1350. This statute bears no relation or resemblance to the requirements of 42 U.S.C. § 1983 or the qualified immunity doctrine.

**B. Governor Cuomo Was Not Personally Involved in any Violation of a Clearly Established Right**

A defendant is also entitled to qualified immunity if a plaintiff fails to plead facts sufficient to show that the defendant was personally involved in an alleged constitutional violation. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135-36 (2d Cir. 2013); *accord, e.g., Iqbal v. Hasty,* 490 F.3d 143, 153 (2d Cir. 2007), *aff'd in part, rev'd in part*, *Ashcroft v. Iqbal*, 556 U.S. 662. (personal involvement "also relevant to a defense of qualified immunity because it goes to the question of whether a defendant's actions violated a clearly established right."). As detailed *supra*, Plaintiffs have failed to plead proper personal involvement on Governor Cuomo's behalf. Beyond the Advisories, Plaintiffs do not allege personal involvement by Governor Cuomo in any other actions taken by any nursing or adult care facility, and essentially only pleads simple supervisory liability. Such allegations are insufficient to justify a finding of personal involvement, and thus cannot form the basis of a § 1983 claim. *See Tangreti*, 983 F.3d at 618. Lack of personal involvement has also supported a finding of qualified immunity in a very similar matter—involving FNHRA claims based on advisories related to nursing home visitation—in this District. *See Mauro*, 2023 WL 2403482, at *5 (qualified immunity appropriate where "Plaintiffs have insufficiently alleged that Defendant Cuomo was personally involved" in the alleged violations).

**C. Governor Cuomo's Actions Were Reasonable And There Is No Basis To Find Otherwise**

Governor Cuomo is entitled to qualified immunity because it was eminently reasonable for him and for DOH officials to act as they did—at the very outset of the pandemic, when information regarding the COVID-19 virus was quite limited, and New York had to react rapidly to the sudden and unprecedented public health emergency to have any chance at stemming the tide. *See United States v. Walton*, 473 F. Supp. 3d 215, 218 (W.D.N.Y. 2020) (noting in July 2020 that "there is limited data and information" regarding COVID-19). It was reasonable for Defendants to believe

23

that their actions did not violate the Constitution, and state and federal courts have been uniformly clear that state action taken to combat the COVID-19 crisis is entitled to deference. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, (Mem)–1614 (2020) (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)). In *South Bay*, the Supreme Court denied an application to enjoin California's restrictions on large public gatherings, stating that COVID restrictions are "a dynamic and fact-intensive matter subject to reasonable disagreement," and that when state officials "undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *Id.* at 1613 (internal quotations omitted).

As another court in this Circuit concluded: "Under *Jacobson*, . . . when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Page v. Cuomo*, 478 F. Supp. 3d 355, 366–67 (N.D.N.Y. 2020) (citations and quotations omitted). Courts frequently reject challenges to public health actions under the *Jacobson* standard. *See Luke's Catering Serv., LLC v. Cuomo*, 485 F. Supp. 3d 369, 384 (W.D.N.Y. 2020) (citation omitted) (finding that "gathering limits are emergency measures which, even if they did curtail constitutional rights, have a 'real or substantial' relation to the public health crisis"); *Geller v. Cuomo*, 476 F. Supp. 3d 1, 15–16 (S.D.N.Y. 2020) (rejecting challenge to Executive Order 202.45, limiting the capacity of certain non-essential gatherings, stating that it "was enacted to protect the public health and bears a real and substantial relation to the public safety concerns at issue"). Plaintiffs cannot plausibly allege that Decedents' constitutional rights have been violated by Decedents contracting a brand-new disease whose transmission mechanisms were yet unknown, and to find otherwise, and to hold state officials liable for actions taken in a

24

statewide emergency would hamstring the government's ability (or desire) to respond in the face of disaster, and would instead promote inaction rather than action. *Cf. Lombardi*, 485 F.3d at 82 ("Knowing that lawsuits alleging intentional misconduct could result from the disclosure of incomplete, confusingly comprehensive, or mistakenly inaccurate information, officials might default to silence in the face of the public's urgent need for information.").

## **CONCLUSION**

For the foregoing reasons, Governor Cuomo respectfully requests that the Court dismiss the Second Amended Complaint.


Dated:          November 17, 2023                                Respectfully submitted,
                 New York, New York


                                                                   */s/ Rita M. Glavin*
                                                                  Rita M. Glavin
                                                                  Michaelene K. Wright
                                                                  GLAVIN PLLC
                                                                  156 West 56th Street, Ste. 2004
                                                                  New York, NY 10019
                                                                  Tel: (646) 693-5505
                                                                  rglavin@glavinpllc.com
                                                                  mwright@glavinpllc.com

                                                                  *Counsel for former Governor Andrew M. Cuomo*