**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

**DANIEL N. ARBEENY,** as the Administrator of
the Estate of **NORMAN ARBEENY** (deceased),
individually and on behalf of others, and **SEAN S.
NEWMAN,** as the Administrator of the Estates of
**MICHAEL J. NEWMAN (deceased),** and
**DOLORES D. NEWMAN (deceased),** individually
and on behalf of others,

                              Plaintiffs,

        v.

**ANDREW M. CUOMO, MELISSA DeROSA,
HOWARD A. ZUCKER, M.D., GREATER NEW
YORK HOSPITAL ASSOCIATION, KENNETH
RASKE, NORTHWELL HEALTH, INC.,
MICHAEL DOWLING,** and **JOHN DOES A-Z,**

                              Defendants.

No. 1:22-cv-2336-LDH-LB
(Consolidated with 2:23-cv-02391-
GRB-ARL)

Hon. LaShann DeArcy Hall

---

**DEFENDANTS GREATER NEW YORK HOSPITAL ASSOCIATION'S AND
KENNETH RASKE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Jeremy M. Creelan
Stephen L. Ascher
Elizabeth A. Edmondson
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
jcreelan@jenner.com
sascher@jenner.com
eedmondson@jenner.com
Tel: 212-891-1600
Fax: 212-891-1699

*Attorneys for Defendants Greater New York
Hospital Association and Kenneth Raske*

Dated: November 17, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 3

    A.    The Parties ........................................................................................ 3

        1.    The Plaintiffs .......................................................................... 3

        2.    The New York Defendants ...................................................... 3

        3.    The Private Party Defendants ................................................. 4

            a.    The GNYHA Defendants ............................................. 4

            b.    The Northwell Defendants ............................................ 4

    B.    The Alleged Events ........................................................................... 4

        1.    The Onset of the COVID Pandemic ...................................... 4

        2.    The Challenged State Advisories ........................................... 5

        3.    The GNYHA Defendants' Alleged Conduct .......................... 6

        4.    The Alleged Connection Between the GNYHA Defendants'
                Conduct and the Harm Suffered by Plaintiffs ....................... 7

    C.    This Lawsuit ...................................................................................... 8

        1.    Procedural History ................................................................. 8

        2.    The Claims in the SAC .......................................................... 8

LEGAL STANDARD ...................................................................................... 9

ARGUMENT .................................................................................................... 9

I.    The SAC's First Count Does Not State a Claim for Deprivation of a Federal
    Right Under Section 1983 Against the GNYHA Defendants ............................ 10

    A.    The GNYHA Defendants Are Not State Actors for Purposes of Section
        1983 .................................................................................................. 10

        1.    The SAC Does Not Meet the Standard for "Joint Action" or
                "Conspiracy." ....................................................................... 10

2.  The SAC Also Does Not Meet the "Compulsion" or "Public Function" Standards.................................................................................15

B.  Qualified Immunity Bars Plaintiffs' Claims ............................................................16

C.  The SAC Does Not Adequately Allege the Element of Violation of a Constitutional Right. ..............................................................................................17

D.  The FNHRA Does Not Supply a Section 1983 Cause of Action Against the GNYHA Defendants, Who Do Not Operate Nursing Homes. ......................20

E.  The SAC Fails to Allege that the GNYHA Defendants' Conduct Proximately Caused the Harms Suffered by Plaintiffs. .........................................21

II.  The SAC's Second Count, for Section 1983 Conspiracy, Fails for the Same Reasons. .................................................................................................................23

III.  The SAC's Third Count Does Not Plead a Section 1985(3) Violation Because It Does Not Plead Discriminatory Animus, Conspiracy, or Violation of a Constitutional Right. ..............................................................................................23

IV.  The SAC's Fourth Count Does Not Plead a Wrongful Death Claim Against the GNYHA Defendants, and in Any Event Fails to State Such a Claim. ............................24

CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

<span style="font-variant: small-caps">Cases</span>

*Agudath Israel of America v. Cuomo*, 983 F.3d 620 (2d Cir. 2020)..............................................18

*Ahlers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012) .........................................................10

*Albright v. Oliver*, 510 U.S. 266 (1994) ....................................................................17

*Amira v. Maimonides Hospital*, No. 21CV3976, 2022 WL 18034533 (E.D.N.Y. Nov. 30, 2022) ...............................................................................10

*Angola v. Civiletti*, 666 F.2d 1 (2d Cir. 1981) .............................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................9, 24

*Baa v. Gonzalez*, No. 22CV2602, 2023 WL 5278482 (E.D.N.Y. Aug. 16, 2023) ......................24

*Bellafaire v. Town of Wheatfield*, 401 F. Supp. 3d 405 (W.D.N.Y. 2019)..................................23

*Bermudez v. Colgate-Palmolive Co.*, No. 21-CV-10988, ---F. Supp. 3d----, 2023 WL 2751044 (S.D.N.Y. Mar. 31, 2023) ...............................................................25

*Biehner v. City of New York*, No. 19-CV-9646, 2021 WL 878476 (S.D.N.Y. Mar. 9, 2021) ......................................................................................24

*Bishop v. Wood*, 426 U.S. 341, 350 (1976) .................................................................18

*Brewster v. Nassau County*, 349 F. Supp. 2d 540 (E.D.N.Y. 2004)..........................................14

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 (S.D.N.Y. 2013) ............................25

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .........................................3

*Chapel Farms Estates, Inc. v. Moerdler*, No. 01 Civ. 3601, 2003 WL 21998964 (S.D.N.Y. Aug. 22, 2003) ..............................................................................12

*Concourse Nursing Home v. Engelstein*, No. 95 CIV. 1666, 1997 WL 672015 (S.D.N.Y. Oct. 29, 1997) ..................................................................11, 12, 13, 15

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)....................................................17

*Dennis v. Sparks*, 449 U.S. 24 (1980).......................................................................14

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ......................................................16

*Doe v. Fenchel*, 837 F. App'x 67 (2d Cir. 2021) .........................................................24

*Dolan v. Connolly*, 794 F.3d 290 (2d Cir. 2015) ........................................................24

*EDF Renewable Development, Inc. v. Tritec Real Estate Co.*, 147 F. Supp. 3d 63 (E.D.N.Y. 2015)........................................................................................................13

*El Basty v. AmGuard Insurance Co.*, 412 F. Supp. 3d 267 (E.D.N.Y. 2019)................................9

*Estate of DeRosa v. Murphy*, No. 22 CV 2301, 2023 WL 3431218 (D.N.J. May 12, 2023) ......................................................................................................5, 16, 19, 20

*Estate of Keenan v. Hoffman-Rosenfeld*, No. 16CV0149, 2019 WL 3410006 (E.D.N.Y. July 29, 2019), *aff'd*, 833 F. App'x 489 (2d Cir. 2020) ........................................17

*Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) ........................................................17

*In re Facebook, Inc., Initial Public Offering Derivative Litigation*, 797 F.3d 148 (2d Cir. 2015).........................................................................................................9

*Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323 (S.D.N.Y. 2020).............................4

*Fiederlein v. New York City Health & Hospitals Corp.*, 56 N.Y.2d 573 (1982).........................22

*Filarsky v. Delia*, 566 U.S. 377 (2012).........................................................................17

*Geller v. Cuomo*, 476 F. Supp. 3d 1 (S.D.N.Y. 2020) .......................................................4

*Gibeau v. Nellis*, 18 F.3d 107 (2d Cir.1994)................................................................21

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999) .................11, 13, 14

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979) .................................24

*Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023) .....................20, 21

*Iosilevich v. City of New York*, No. 21 CV 4717, 2022 WL 19272855 (E.D.N.Y. Aug. 10, 2022) ........................................................................................................18

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)................................................18, 19, 20

*Jeanty v. Sciortino*, No. 22CV319, 2023 WL 2931863, at *8 (N.D.N.Y. Apr. 13, 2023) ...............................................................................................................10

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007) ........................................................17, 18, 19

*Lowrance v. Achtyl*, 20 F.3d 529 (2d Cir. 1994)..............................................................17

*Lurch v. City of New York*, No. 19-CV-11253, 2021 WL 1226927 (S.D.N.Y. Mar. 31, 2021) ...............................................................................................................10

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) ...........................................10

*Mauro v. Cuomo*, No. 21CV1165, 2023 WL 2403482 (E.D.N.Y. Mar. 8, 2023) ..................16, 20

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085 (2d Cir. 1993) .............................................................................................................................24

*Mira v. Kingston*, 218 F. Supp. 3d 229 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) .............................................................................................................................3

*Missere v. Gross*, 826 F. Supp. 2d 542 (S.D.N.Y. 2011)............................................................11

*Myers v. Patterson*, 819 F.3d 625 (2d Cir. 2016) .......................................................................16

*NCAA v. Tarkanian*, 488 U.S. 179 (1988) .......................................................................11, 21, 22

*Nguedi v. Caulfield*, 813 F. App'x 1 (2d Cir. 2020) ...................................................................14

*Omnipoint Communications Inc. v. Comi*, 233 F. Supp. 2d 388 (N.D.N.Y. 2002)..........12, 13, 22

*Our Wicked Lady LLC v. Cuomo*, No. 21CV0165, 2021 WL 915033 (S.D.N.Y. Mar. 9, 2021)...........................................................................................................................18

*Pemberton v. City of New York*, No. 18 CIV. 7908, 2020 WL 4432095 (S.D.N.Y. July 31, 2020).........................................................................................................................22

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)...................................................................................16

*Proano v. Gutman*, 211 A.D.3d 978 (2d Dep't 2022) .................................................................25

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ......................................................23

*Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743 (9th Cir. 2003) ..............................12, 15

*Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) .............................................................................................................................18

*Sommer v. Dixon*, 709 F.2d 173 (2d Cir. 1983) (per curiam)................................................14, 23

*Soto v. City of New York*, 132 F. Supp. 3d 424 (E.D.N.Y. 2015).................................................21

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020)....................18, 19, 20

*Stiglich v. Contra Costa County Board of Supervisors*, 106 F.3d 409, 1997 WL 22410 (9th Cir. 1997) (table op.) ............................................................................................15

*Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255 (2d Cir. 2008) .............................................................................................................................10, 15

*Taylor ex rel. Wazyluk v. Housing Authority of City of New Haven*, 645 F.3d 152 (2d Cir. 2011) ..............................................................................................21

*Toussie v. Powell*, 323 F.3d 178 (2d Cir. 2003) .............................................17

*Town of Islip v. Datre*, No. 16-CV-2156, 2022 WL 445680 (E.D.N.Y. Feb. 14, 2022) ..............................................................................................................13

*Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) .......................21, 22

*Tri-Corp Housing Inc. v. Bauman*, 826 F.3d 446 (7th Cir. 2016) ................20

*United Bhd. of Carpenters, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983) ...........................................................................................................24

*Velasquez v. City of New York*, No. 12-CV-4689, 2012 WL 5879484 (E.D.N.Y. Nov. 21, 2012) ..................................................................................................17

*Wallace v. Suffolk County Police Department*, 809 F. Supp. 2d 73 (E.D.N.Y. 2011) ..............................................................................................................21

*Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803 (S.D.N.Y. 1979) ..........12

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995) ................................17

## STATUTES

42 U.S.C. § 1396r(a)(1) ...................................................................................20

42 U.S.C. § 1983 .....................................................................................*passim*

42 U.S.C. § 1985 ...................................................................................8, 23, 24

## OTHER AUTHORITIES

42 C.F.R. pt. 483 (2016) ..................................................................................19

9 N.Y.C.R.R. § 8.202.8 ....................................................................................25

9 N.Y.C.R.R. § 8.202.10 ....................................................................................4

9 N.Y.C.R.R. § 8.202.18 ....................................................................................5

9 N.Y.C.R.R. § 8.202.67 ..................................................................................25

10 N.Y.C.R.R. pt. 415 (2013) ..........................................................................19

N.Y. Est. Powers & Trust Law § 5-4.1 .....................................................8, 24, 25

## INTRODUCTION

Defendants Greater New York Hospital Association ("GNYHA") and its President and Chief Executive Officer Kenneth Raske (collectively with GNYHA, the "GNYHA Defendants") respectfully move to dismiss the Second Amended Complaint (ECF No. 49, "SAC") filed by Plaintiffs Daniel N. Arbeeny and Sean S. Newman.

The GNYHA Defendants mourn all who died from COVID-19, and sympathize with Mr. Arbeeny and Mr. Newman, who lost loved ones at the height of the pandemic in 2020. But the GNYHA Defendants are not responsible for those deaths. The GNYHA Defendants did nothing more than advocate for governmental policies that would increase hospital capacity and allow their members to serve pressing patient needs during an unprecedented public health crisis.

Plaintiffs' claims challenge New York State Advisories prohibiting nursing homes and assisted-living facilities from denying re-admission or admission to residents solely based on a confirmed or suspected diagnosis of COVID-19 if the residents were medically stable for discharge from a hospital. Plaintiffs vaguely allege that these Advisories were improper and caused the admission of COVID patients to nursing homes and assisted-living facilities.

These claims are meritless as against the governmental officials (the "New York Defendants") who allegedly promulgated and enforced the Advisories during a fast-moving public health emergency. Plaintiffs concede that the need for hospital beds was so significant that, shortly before the Advisories, the State directed hospitals to increase their capacity to care for patients by a minimum of 50 percent. Under these exigent circumstances, government officials were forced to make difficult decisions on how to meet that urgent need. Plaintiffs cannot use civil rights statutes to second-guess these decisions.

The claims are even more obviously defective as against the *non-governmental* defendants, including the undersigned GNYHA Defendants, a trade association representing hospitals and its

CEO.  These private defendants merely advocated for the Advisories, based on the need to discharge medically stable patients who required nursing home or assisted-living care in order to ensure that GNYHA member-hospitals had sufficient capacity to treat critically ill COVID-19 patients in the pandemic's first wave.  Because the law stringently protects this type of private advocacy for government action during a public health emergency, the SAC must be dismissed against the GNYHA Defendants.

More specifically, Plaintiffs' primary Section 1983 claim must be dismissed because Section 1983 applies only to state actors, and the SAC fails to meet the high bar for alleging that the GNYHA Defendants—both private parties—took actions that can be attributed to the state. But even if the GNYHA Defendants somehow were state actors, they would nevertheless be protected by qualified immunity.  The SAC also does not adequately allege that the GNYHA Defendants' advocacy at the height of a novel and virulent pandemic "shocked the conscience" as required, or that the GNYHA Defendants plausibly caused Plaintiffs' harm.  Plaintiffs' Section 1983 conspiracy claim falls short for similar reasons.  In sum, the Court should reject this breathtaking attempt to expand federal liability for private parties who exercise their right to advocate for government action.

The SAC also fails to plead a Section 1985 violation, as it does not (and cannot) allege any race- or class-based discrimination from the GNYHA Defendants.  Nor does it sufficiently allege a deprivation of or conspiracy to deny any constitutional right.

All of the claims are also insufficient because Plaintiffs do not allege that the Advisories caused the deaths in question.  Plaintiffs do not allege that COVID patients were admitted to the decedents' facilities as a result of the Advisories prior to the decedents' infection with COVID-19, or that any such patients actually caused the decedents' infections.

The SAC should be dismissed against the GNYHA Defendants.

## BACKGROUND[1]

### A.    The Parties

#### 1.    The Plaintiffs

Plaintiffs are the administrators of the estates of certain residents of nursing homes and assisted-living facilities who passed away from COVID-19 early in the pandemic, SAC ¶¶ 3, 6, 9, and a putative class of similarly situated residents, SAC ¶ 10.   According to the SAC, Norman Arbeeny, Daniel Arbeeny's father, was a resident of Cobble Hill Health Center in Brooklyn, New York, SAC ¶ 1, who "began experiencing COVID-19 … symptoms prior to his discharge … on April 8, 2020, [and] died of COVID on April 21, 2020," SAC ¶ 2.   Michael Newman, Sean Newman's father, was a resident of Grandell Rehabilitation and Nursing Center in Long Beach, New York, SAC ¶ 4, who "began experiencing COVID symptoms … on March 29, 2020, and then died of COVID three hours later," SAC ¶ 5.   Dolores Newman, Sean Newman's mother, was a resident of Long Island Living Center in Queens, New York, SAC ¶ 7, who "began experiencing COVID symptoms … on April 10, 2020…. [and] died of COVID … on April 14, 2020," SAC ¶ 8.

#### 2.    The New York Defendants

Defendant Andrew Cuomo served as Governor of New York from 2011 to 2021.   SAC ¶ 11.   Defendant Melissa DeRosa served as Secretary to the Governor—*i.e.*, the Governor's chief of staff—from 2017 to 2021.   SAC ¶ 12.   Defendant Howard Zucker served as Commissioner of the NYSDOH from 2015 to 2021.   SAC ¶ 13.

---

[1] The SAC's factual allegations are accepted as true solely for purposes of this Motion.   *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).   The SAC is also deemed to include "any statements or documents incorporated in it by reference."   *Id.*   In addition, the Court may consider matters subject to judicial notice, *e.g.*, *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017), including the New York State Department of Health's ("NYSDOH") March 25, 2020 and April 7, 2020 Advisories referenced at length in the SAC.

### 3. The Private Party Defendants

#### a. The GNYHA Defendants

Defendant GNYHA is a trade association that "represent[s] and engage[s] in public advocacy on behalf of approximately 160 hospitals and health systems" located in greater New York. SAC ¶ 14. Defendant Kenneth Raske is its President and CEO. SAC ¶ 15.

#### b. The Northwell Defendants

Defendant Northwell is "a nonprofit integrated healthcare network that is New York State's largest healthcare provider and private employer." SAC ¶ 16. Defendant Michael Dowling is its President and CEO. SAC ¶ 18.

### B. The Alleged Events

#### 1. The Onset of the COVID Pandemic

New York's first COVID "wave" peaked by late April 2020. SAC ¶¶ 46-47. This Court can follow other courts in judicially noticing that the COVID virus "spread worldwide in an exceptionally short period of time, posing a serious public health risk." *Geller v. Cuomo*, 476 F. Supp. 3d 1, 4 n.1 (S.D.N.Y. 2020). This Court can also judicially notice that COVID affected New York City particularly quickly in early Spring 2020. *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 327, 329 n.2 (S.D.N.Y. 2020).

The pandemic put an enormous strain on New York's hospitals. "As thousands of people per day required hospitalization, the virus overwhelmed New York's healthcare system, despite drastic efforts to blunt its spread." *Id.* (taking judicial notice of CDC statistics). To address this strain, the State directed hospitals to immediately increase their bed capacity by 50 percent. SAC ¶ 52. This court can judicially notice that the State also ordered hospitals to take "all measures necessary to increase the number of beds available to patients," *see* 9 N.Y.C.R.R. § 8.202.10, relaxed regulations restricting nurses, students, and foreign graduates from performing certain

COVID treatments, *see id.*, and suspended restrictions on medical professionals from out of state, from other practices, or after retirement, *see id.*; 9 N.Y.C.R.R. § 8.202.18.  Public sites were approved as additional hospital sites.  SAC ¶¶ 65-67.  State officials also consulted with hospital officials in large group settings and smaller meetings.  SAC ¶ 47.

Of particular relevance here, hospital officials were especially concerned that hospitals "couldn't afford to house recovered nursing-home residents long-term, with models showing they soon could be swamped."  SAC ¶ 53.  The same concern plagued officials in other states as well.  This Court can judicially notice that on March 31, 2020, New Jersey issued a nearly identical directive to the Advisories at issue here, in order to meet the "urgent need to expand hospital capacity."  *Est. of DeRosa v. Murphy*, No. CV222301ZNQTJB, 2023 WL 3431218, at *4 (D.N.J. May 12, 2023) (quoting relevant directive).  Other states were also considering "adopting a similar approach in order to free up hospital beds."  SAC ¶ 63.

### 2.    The Challenged State Advisories

To address this capacity concern, the NYSDOH issued Advisories on March 25, 2020 (with respect to nursing homes) and on April 7, 2020 (with respect to assisted-living facilities).  According to the SAC, the Advisories "order[ed] that no person could be 'denied re-admission or admission to [a nursing home/assisted-living facility] solely based on a confirmed or suspected diagnosis of COVID-19,'" and prohibited nursing homes and assisted-living facilities "from requiring a hospitalized resident who is determined medically stable to be tested for COVID-19 prior to admission or readmission."   SAC ¶ 50 (emphasis omitted); *see Advisory: Hospital Discharges and Admissions to Nursing Homes*, N.Y. Dep't of Health (Mar. 25, 2020) (Ex. A); *Advisory: Hospital Discharges and Admissions to ACFs*, N.Y. Dep't of Health (Apr. 7, 2020) (Ex. B).  The Advisories also stated that infection precautions should be maintained and made a priority, and provided guidance on requesting personal protective equipment.  *See* Exs. A & B.

The SAC alleges the Advisories were improper because the New York Defendants promulgated, enforced, and covered up the factual circumstances underpinning them for political gain. *See, e.g.*, SAC ¶¶ 65-82, 105-109, 113-122, 129-144. The SAC also cites criticism of the Advisories suggesting that they were unnecessary to preserve hospital capacity and somehow added to the surge of COVID patients requiring hospital care. *See* SAC ¶¶ 63, 73-74, 149. The SAC does not allege that this commentary reflected any medical consensus about public-health options at the time the Advisories were promulgated.

### 3. The GNYHA Defendants' Alleged Conduct

Construing the allegations in the SAC in the light most favorable to Plaintiffs, the SAC makes only the following allegations about the GNYHA Defendants' conduct:

- The GNYHA Defendants met several times with Governor Cuomo at the outset of the pandemic, both in "large-group conference calls" and in "smaller meetings." SAC ¶¶ 47-49. The SAC does not allege further details about the nature, purpose, or content of these meetings, with certain exceptions discussed immediately below.

- At the outset of the pandemic, the GNYHA Defendants allegedly urged New York state officials to offer hospitals "help with nursing homes," as "[h]ospitals couldn't afford to house recovered nursing-home residents long-term, with models showing they would soon be swamped." SAC ¶ 53. The SAC acknowledges that "hospitals made [this] request because Cuomo had ordered hospitals to immediately increase bed capacity by at least 50%." SAC ¶ 52.

- As the pandemic progressed, GNYHA "petitioned the New York State Legislature for legislation ... to grant any health care facility and health care staff immunity" from liability for "providing health care services to COVID patients." SAC ¶ 123. GNYHA "drafted and aggressively advocated for" New York's Emergency Disaster Treatment Protection Act, which

granted much of the immunity that care providers had sought.  SAC ¶¶ 124-25.

- The GNYHA Defendants made campaign contributions to New York State officials during the pandemic.  SAC ¶ 127.  They also allegedly made campaign contributions before the pandemic.  SAC ¶ 55.  One of GNYHA's pre-pandemic contributions was made to the State Democratic Party "at the request of the Cuomo campaign," and was followed "[s]oon thereafter" by an "increase in Medicaid reimbursement rates for the first time since 2008" even though "Medicaid spending was drastically over budget."  SAC ¶ 55 (emphasis omitted).

- The New York Defendants issued the Advisories "at the behest of and with the direct assistance of … GNYHA and Northwell," "[a]t the urging of GNYHA and Northwell," and in response to "pleading" by the "hospital lobby."  SAC at 7, ¶¶ 50, 52.  GNYHA and Northwell "wrote the Directives in conjunction with the New York Defendants."  SAC ¶ 59.  The SAC further alleges that the GNYHA Defendants advocated for the Advisories in order to somehow profit from higher Medicare reimbursement rates for using "beds for COVID patients rather than non-COVID patients."  SAC at 7, ¶¶ 51, 96-98, 176c.

### 4. The Alleged Connection Between the GNYHA Defendants' Conduct and the Harm Suffered by Plaintiffs

The SAC does not allege that the facilities where Norman Arbeeny or the Newmans resided admitted any COVID patients from hospitals between the issuance of the relevant Advisories and their infection.  Nor does it allege that the facilities previously were not admitting or not already caring for COVID patients before the Advisories.  The SAC also does not allege that the admission of any COVID patient as a result of the Advisories actually caused the infections.  Instead, the SAC alleges broadly that 9,000 COVID-positive patients were admitted to nursing homes and assisted-living facilities across New York while the Advisories were in effect, SAC ¶ 75; that all of those patients "otherwise would not have been admitted," SAC at 8, ¶ 17; that 15,000 nursing-

home and assisted-living-facility residents died from COVID at some point after the Advisories were passed, SAC ¶ 76; and that a subsequent report determined the Advisories to be "associated with a statistically significant increase in resident deaths," SAC at 3, ¶¶ 76, 149.

**C.    This Lawsuit**

**1.    Procedural History**

This case reflects two consolidated actions, the first brought by Mr. Arbeeny on April 26, 2022, and the second by Mr. Newman on March 28, 2023.  The Court consolidated the Arbeeny and Newman actions and designated the Arbeeny action as the lead case.  Apr. 17, 2023 Text-Only Order.  Following each defendant's filing of pre-motion letters seeking leave to dismiss one or both lawsuits, the Court granted Plaintiffs leave to file the Second Amended Complaint, which was filed on August 24, 2023.  July 31, 2023 Text-Only Order; SAC at 1.

**2.    The Claims in the SAC**

The SAC seeks monetary damages based on four counts.

*Count 1: Violation of 42 U.S.C. § 1983.*  The SAC alleges that all Defendants deprived plaintiffs of six rights under Section 1983: "(1) statutory rights under the Federal Nursing Home Reform Act ("FNHRA"); (2) the right to be free from cruel, unhuman, or degrading treatment; (3) the right to safe conditions[;] (4) the right to life; (5) the right to bodily integrity; and (6) the right to be free from state-created danger."  SAC ¶ 181.

*Count 2: Violation of 42 U.S.C. § 1983 (Conspiracy).*  The SAC alleges that all Defendants conspired to deprive Plaintiffs of the same rights underpinning the first count.  SAC ¶¶ 232-235.

*Count 3: Violation of 42 U.S.C. § 1985(3) (Conspiracy).*  The SAC alleges that all Defendants conspired to deprive Plaintiffs "of the equal protection of the laws and of the equal privileges and immunities under the laws" in violation of Section 1985(3).  SAC ¶¶ 237-239.

*Count 4: New York Estates Powers & Trusts Law § 5-4.1.*  The SAC alleges that the New

York Defendants (*i.e.*, the government officials) are liable for wrongful death under New York law, but does not bring this claim against the GNYHA Defendants.  SAC at 2, ¶¶ 241-242.

## LEGAL STANDARD

"To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *El Basty v. AmGuard Ins. Co.*, 412 F. Supp. 3d 267, 268-69 (E.D.N.Y. 2019) (Hall, J.) (quotation marks omitted).  This standard requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court must credit all well-pleaded factual allegations, it is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015) (cleaned up).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The SAC does not meet these standards, and must be dismissed accordingly.

## ARGUMENT

**I.    The SAC's First Count Does Not State a Claim For Deprivation of a Federal Right Under Section 1983 Against the GNYHA Defendants.**

Plaintiffs' Section 1983 claim against the GNYHA Defendants fails as a matter of law for four distinct reasons.  *First*, the GNYHA Defendants are not state actors who can be sued under Section 1983.  Courts have roundly rejected that lawful advocacy activities on the part of private parties transform them into state actors, even if the resulting government action is alleged to violate the plaintiff's rights.  *Second*, even if the GNYHA Defendants were state actors, qualified immunity bars Plaintiffs' claims.  *Third*, the SAC fails to allege any violation of a federal

constitutional or statutory right as required to state a Section 1983 claim. And *fourth*, the SAC fails to allege that the GNYHA Defendants' conduct caused the harms suffered by Plaintiffs.

**A.      The GNYHA Defendants Are Not State Actors for Purposes of Section 1983.**

The purpose of Section 1983 is to provide individuals with a mechanism to vindicate federal rights when those rights are violated by state officials. *See, e.g.*, *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). To state a claim under Section 1983, "a plaintiff must allege that some person acting under color of state law deprived him of a federal right." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012).

In certain "limited circumstances," a private party can be so functionally similar to a government official that an "exception[] to [this] general rule" may be made. *Lurch v. City of New York*, No. 19-CV-11253, 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021) (citing *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019)). To determine whether a private party can be held liable under Section 1983, courts look to (1) whether "the [State] compelled the conduct" (the "compulsion test"); (2) there is a "sufficiently close nexus between the [State] and the private conduct" (the "joint action test" or "close nexus test"); or (3) the private conduct "consisted of activity that has traditionally been the exclusive prerogative of the [State]" (the "public function test"). SAC ¶ 178 (quoting *Jeanty v. Sciortino*, No. 22CV319, 2023 WL 2931863, at *8 (N.D.N.Y. Apr. 13, 2023)). But "holding a private actor liable for [Section 1983] violations is a high bar." *Amira v. Maimonides Hosp.*, No. 21CV3976, 2022 WL 18034533, at *6 (E.D.N.Y. Nov. 30, 2022). Plaintiffs cannot clear this hurdle under any possible theory of state action.

**1.      The SAC Does Not Meet the Standard for "Joint Action" or "Conspiracy."**

The SAC appears to rely primarily on the second prong noted above, the "joint action" test for state action, *see* SAC ¶¶ 84, 179, but it does not come close to meeting this standard. The

general test for joint action looks to whether there was a "plan, prearrangement, conspiracy, custom, or policy" between the private defendants and state officials. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999). But courts reject applying the test so expansively as to encompass the GNYHA Defendants' alleged conduct here.

Courts in this Circuit have repeatedly recognized that a "mere request or demand for action" from the government is not sufficient to meet this standard and expose a private party to Section 1983 liability. *Concourse Nursing Home v. Engelstein*, No. 95 CIV. 1666, 1997 WL 672015, at *2 (S.D.N.Y. Oct. 29, 1997); *see also, e.g.*, *Ginsberg*, 189 F.3d at 272-73; *Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011) ("[I]t is well established that a private party does not act under color of state law when he merely elicits but does not join in an exercise of official state authority." (cleaned up)) (gathering cases). That principle encompasses precisely the lawful advocacy activities that the GNYHA Defendants are alleged to have undertaken.

For example, a private party does not engage in joint action with the state when it persuades an agency to change course, even when that change specifically harmed the plaintiff. *See Concourse Nursing*, 1997 WL 672015, at *1-2. Nor is a private party a state actor by virtue of having "sought to invoke [the government's] regulatory apparatus" and having "lobbied and pressured" local officials to reach a certain finding. *Missere*, 826 F. Supp. 2d at 567.[2] Critically, even if the private party and state officials eventually agree on a desired outcome, "where the *state* actor commits the 'final act challenged' by the plaintiff … the private party is not automatically liable under Section 1983 even if its conduct clearly influenced the state's actions." *Concourse Nursing*, 1997 WL 672015, at *3 (citing *NCAA v. Tarkanian*, 488 U.S. 179, 192-93 (1988)).

---

[2] The court in *Missere* assumed, without deciding, that a very different theory of joint action was potentially colorable: the plaintiff there alleged that a *government official* had provided a private defendant with specific instructions on how to circumvent certain approvals. 826 F. Supp. 2d at 568-69.

It also does not make a difference whether the private party proposed draft language to government officials, as the GNYHA Defendants are alleged to have done here.  Courts have repeatedly rejected Section 1983 claims based on private parties' conduct in drafting and proposing policies that were ultimately enacted, because "[w]hen state legislators consider, draft, and vote for a statute[—]even if they do so with a constituent's help—they are legitimately exercising the duties of their office, not acting for the state with private parties in a 'joint activity.'"  *Single Moms, Inc. v. Mont. Power Co.*, 331 F.3d 743, 745-47 (9th Cir. 2003); *see also Omnipoint Commc'ns Inc. v. Comi*, 233 F. Supp. 2d 388, 390, 395 (N.D.N.Y. 2002) (rejecting claims based on private party's conduct in drafting local ordinance).

This line of cases rejects the possibility that "any private citizen that recommended proposed legislation or drafted proposed legislation that was subsequently declared unconstitutional would be subject to liability under section 1983."  *Omnipoint*, 233 F. Supp. 2d at 395.  And for good reason: an expansion of the definition of state action to include such conduct would violate the fundamental principle that government advocacy is a First Amendment-protected right that cannot give rise to Section 1983 liability.  *See, e.g.*, *Chapel Farms Ests., Inc. v. Moerdler*, No. 01 Civ. 3601, 2003 WL 21998964, at *6 (S.D.N.Y. Aug. 22, 2003) (rejecting Section 1983 challenge to advocacy activity, noting that "[f]ar from being a violation of plaintiffs' rights, such activity is the constitutional right of [defendant]"); *see also Single Moms*, 331 F.3d at 748 ("Here, [defendant's] lobbying was an exercise of its lawful First Amendment right to petition the government, and that is a countervailing reason against attributing [its] activity to the State."); *Concourse Nursing*, 1997 WL 672015, at *2 (noting that lobbying efforts do not constitute state action, citing "the right to petition 'all departments of the Government'" (citation omitted)); *Weiss v. Willow Tree Civic Ass'n*, 467 F. Supp. 803, 818 (S.D.N.Y. 1979) ("[T]he First Amendment

protects attempts to influence the passage or enforcement of laws, no matter how harmful their incidental impact on third parties may be." (quotation marks omitted)).[3]   It would also contravene the general principle that Section 1983 applies only to "those who act under color of law," and not those who "merely stand to benefit from" such action.  *Ginsberg*, 189 F.3d at 273.

The SAC's allegations fall squarely within the case law declining to treat private parties as state actors when they merely elicit state action through advocacy.   Plaintiffs allege several meetings between the GNYHA Defendants and state officials, SAC ¶¶ 48-49, and charge the GNYHA Defendants with urging, pleading, drafting, and otherwise petitioning for the Advisories. *See* SAC ¶¶ 50, 52-53, 59.  These "mere request[s] or demand[s] for action" from the government cannot ground Section 1983 liability.  *Concourse Nursing Home*, 1997 WL 672015, at *2; *see also supra* pages 11-13.   The same principles apply to the allegations that GNYHA successfully "petition[ed] the New York State Legislature for" and "draft[ed]" legislation that granted healthcare providers immunity for their COVID care, SAC ¶¶ 123-125—which, in any event, is entirely separate legislation that the SAC does not and cannot link to the issuance of the Advisories.

It does not make a difference whether, as the SAC alleges, the "New York Defendants were overly reliant on [GNYHA]" for their public-health policy, culminating in the issuance of the Advisories.  SAC ¶ 51.  A state actor's decision to act on a private party's statements or petitions cannot transform those petitions into state action.  *See*, *e.g.*, *Ginsberg*, 189 F.3d at 272; *Omnipoint*, 233 F. Supp. 2d at 395 (dismissing Section 1983 challenge to successful advocacy because "it was

---

[3] This is consistent with courts' broader recognition, under the *Noerr-Pennington* doctrine, that there must be limitations on lawsuits challenging government advocacy activity "in order to protect the First Amendment right to petition the government," so long as there is not "overtly corrupt conduct, such as threatening or bribing a public official."  *EDF Renewable Dev., Inc. v. Tritec Real Est. Co.*, 147 F. Supp. 3d 63, 68-69 (E.D.N.Y. 2015) (quotation marks omitted) (dismissing tort claim centered on government lobbying); *see also Town of Islip v. Datre*, No. 16-CV-2156, 2022 WL 445680, at *6 (E.D.N.Y. Feb. 14, 2022) (dismissing Section 1983 claim under *Noerr-Pennington* doctrine).

ultimately the Town's decision to accept [plaintiffs'] advice"); *see also supra* pages 11-13.  Nor would it matter whether the GNYHA Defendants advocated for the Advisories to "increas[e]" hospitals' "profits," even if true.  SAC at 7 & ¶ 51.  As a necessary corollary to the protected nature of government advocacy activities, private parties are obviously allowed to request government action that benefits their own interests.  *See Ginsberg*, 189 F.3d at 273; *supra* pages 11-13.

Plaintiffs attempt to bolster their joint-action claims by asserting a "corrupt conspiracy" between the New York Defendants and the GNYHA Defendants.  *See* SAC ¶¶ 51, 179, 223; *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (distinguishing between "merely resorting to the courts and being on the winning side of a lawsuit" and being in a "corrupt conspiracy involving bribery of the judge").  But the SAC's bare assertions of conspiracy are insufficient to allege state action.

"Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard."  *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004).  Because conspiracy claims "are so easily made and can precipitate such protracted proceedings," a "detailed fact pleading is required to withstand a motion to dismiss."  *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam).  But the SAC offers only boilerplate allegations that the GNYHA Defendants' conduct "constituted a corrupt conspiracy taken 'under color' of [state] law for purposes of § 1983 actions."  SAC ¶ 223; *see also* SAC ¶ 51 (alleging "a conspiracy of corruption and undue influence from inception, as the New York Defendants were overly reliant on New York's powerful and influential hospital lobby"); SAC ¶ 179 (alleging "a plan, prearrangement, conspiracy, custom, and/or policy shared by Defendants GNYHA and Northwell and the New York Defendants").  These conclusory allegations are not enough.  *See, e.g.*, *Brewster*, 349 F. Supp. 2d at 547; *Nguedi v. Caulfield*, 813 F. App'x 1, 3 (2d Cir. 2020) (affirming rejection of Section 1983 claim against private party for

failure to offer more than "conclusory allegations" that he "conspired with state actors").

Nor can Plaintiffs establish a conspiracy by alleging "political contributions" by GNYHA, which the SAC does not allege were in any way unlawful or made in return for particular government commitments. SAC ¶ 127. Mere insinuation that political contributions somehow influenced the New York Defendants is not enough, absent any allegation of misconduct or how such contributions supposedly influenced government action. *See, e.g.*, *Concourse Nursing*, 1997 WL 672015, at *2 (rejecting allegations about cashing in political chip, without greater showing of impropriety); *Single Moms*, 331 F.3d at 746, 747-48 (rejecting state-action theory where private party allegedly donated to legislature campaign funds); *Stiglich v. Contra Costa Cnty. Bd. of Supervisors*, 106 F.3d 409, 1997 WL 22410, at *4-5 (9th Cir. 1997) (table op.) (similar); *supra* pages 11-13. For all these reasons, the conspiracy allegations cannot establish state action.

### 2. The SAC Also Does Not Meet the "Compulsion" or "Public Function" Standards.

The SAC also recites the standards for the "compulsion" and "public function" tests for state action, but the absence of factual allegations leaves it unclear whether Plaintiffs are attempting to invoke either of these theories. *See* ¶¶ 84c, 178. In any event, the SAC contains no allegations that come close to demonstrating "compulsion" or performance of a "public function"—nor could it. The SAC charges the GNYHA Defendants with nothing more than a voluntary exercise of their right to petition the government, and thus cannot claim that their alleged conduct in advocating for the Advisories was "compelled" by the state. Nor does the SAC allege that the GNYHA Defendants were delegated any "powers traditionally *exclusively* reserved to the [s]tate," as required to meet the "public function" test. *Sybalski*, 546 F.3d at 259 (quotation marks omitted). At most, the SAC alleges that the GNYHA Defendants helped to draft the Advisories, without alleging that they issued or had enforcement authority over the Advisories. This allegation

is not sufficient.  Again, the case law is clear that drafting or proposing policies is not a power exclusively reserved to the state: when private parties propose draft language for statutes or regulations, this is protected activity—not state action.  *See supra* pages 11-13.

### B.    Qualified Immunity Bars Plaintiffs' Claims.

As an alternative ground for dismissal, Plaintiffs' claims are barred by qualified immunity. If the GNYHA Defendants are deemed state actors, under these alleged facts they must be entitled to the same qualified immunity as state actors.  "A state actor charged under § 1983 … is entitled to have the action dismissed on the basis of qualified immunity if at the time of the challenged conduct there was no 'clearly established law' that such conduct constituted a constitutional violation."  *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016).  "The 'clearly established' standard" applies to a state actor's conduct "in the particular circumstances before him."  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *see also Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (cautioning against "defin[ing] clearly established law at a high level of generality").

The SAC does not adequately allege a violation of a clearly established law.  The District of New Jersey, in considering the constitutionality of the nearly identical directive issued by New Jersey officials, held that it is exceedingly difficult to identify clearly established law in the context of a "rare, once-in-a-century global health crisis for which guidance has constantly evolved." *DeRosa*, 2023 WL 3431218, at *5.  Indeed, "federal courts around the country have granted state officials qualified immunity at the motion to dismiss stage for [COVID restrictions] on account of the public health crisis, and the ongoing and changing circumstances."  *Mauro v. Cuomo*, No. 21CV1165, 2023 WL 2403482, at *6 (E.D.N.Y. Mar. 8, 2023) (gathering cases).  This is even more the case as to the GNYHA Defendants' alleged violations, which hinge exclusively on their advocacy efforts—conduct that certainly was not prohibited by clearly established law at the time.

16

Accordingly, "[e]ven if the Court were to find [the GNYHA Defendants] were state actors, qualified immunity would shield them from § 1983 liability." *Est. of Keenan v. Hoffman-Rosenfeld*, No. 16CV0149, 2019 WL 3410006, at *21 (E.D.N.Y. July 29, 2019), *aff'd*, 833 F. App'x 489 (2d Cir. 2020). The purpose behind qualified immunity, namely, protecting state actors when they are required to make difficult policy decisions, would be served, not hindered, by extending it to parties like the GNYHA Defendants who petition and inform the government in support of their members' ability to care for critically ill patients. *See Filarsky v. Delia*, 566 U.S. 377, 391 (2012); *Fabrikant v. French*, 691 F.3d 193, 211 (2d Cir. 2012); *cf. Toussie v. Powell*, 323 F.3d 178, 184 (2d Cir. 2003) (leaving open extension of qualified immunity to such situations).

### C. The SAC Does Not Adequately Allege the Element of Violation of a Constitutional Right.

Putting aside qualified immunity, the SAC's Section 1983 claim also does not adequately allege a violation of any federal right as required to support a Section 1983 claim. Although the SAC suggests a list of substantive due process rights that Defendants allegedly violated—the rights to be free from cruel, unhuman, or degrading treatment; to safe conditions; to life; to bodily integrity; and to be free from state-created danger, SAC ¶ 181[4]—a substantive due process violation requires allegations of conduct that "shock the conscience." The SAC does not come close to meeting this requirement.

To successfully plead a substantive due process violation, it is not enough for the SAC to allege that the GNYHA Defendants' conduct was "incorrect or ill-advised." *Lowrance v. Achtyl*,

---

[4] These are all substantive due process allegations. *See Xuncax v. Gramajo*, 886 F. Supp. 162, 184-85 (D. Mass. 1995) (right against cruel, inhuman, or degrading treatment, which reflects international-law principles coextensive with U.S. constitutional protections); *Velasquez v. City of New York*, No. 12-CV-4689, 2012 WL 5879484, at *2 (E.D.N.Y. Nov. 21, 2012) (right to safe conditions); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (right to life); *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994) (right to bodily integrity); *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (right against state-created danger).

20 F.3d 529, 537 (2d Cir. 1994) (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). "Government action resulting in bodily harm is not a substantive due process violation unless the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quotation marks omitted). This requires that the alleged conduct be "truly 'brutal and offensive to human dignity.'" *Id.* at 81 (quoting *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002)).

Policy decisions do not shock the conscience where the relevant actors "were required to make decisions using rapidly changing information about the ramifications of unprecedented events," subject to the "pull of competing obligations." *Lombardi*, 485 F.3d at 82-83. This is especially true in the context of combatting infectious disease, an area where courts, relying on the Supreme Court's ruling in *Jacobson v. Massachusetts*, have long recognized that state actors are entitled to broad deference. 197 U.S. 11, 31 (1905) (applying deferential review to "legislative action … enacted to protect the public health"); *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) ("Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" (quoting *Jacobson*, 197 U.S. at 38)).[5]

Under these intentionally permissive standards, the Advisories did not "shock the

---

[5] While *Jacobson*'s deferential review has been curtailed in suits invoking the Free Exercise Clause, *see Agudath Israel of America v. Cuomo*, 983 F.3d 620, 635-36 (2d Cir. 2020), subsequent cases establish that this deference otherwise applies to government decisions relating to the COVID-19 pandemic. *See, e.g.*, *Our Wicked Lady LLC v. Cuomo*, No. 21CV0165, 2021 WL 915033, at *3 & n.4 (S.D.N.Y. Mar. 9, 2021) (rejecting challenge to indoor dining capacity limits, and noting that outside of the Free Exercise context, "[f]ederal courts across the country have upheld state and local COVID-19 restrictions based upon the Supreme Court's analysis in *Jacobson*"); *accord Iosilevich v. City of New York*, No. 21 CV 4717, 2022 WL 19272855, at *4 n.14 (E.D.N.Y. Aug. 10, 2022).

conscience," notwithstanding the SAC's conclusory invocation of that phrase.  They were issued (or, in the GNYHA Defendants' case, advocated for) "using rapidly changing information about the ramifications of unprecedented events," *Lombardi*, 485 F.3d at 82, at a time when hospital-bed capacity needed to immediately increase by 50%, SAC ¶ 51.  The Advisories were thus designed to serve a pressing, unprecedented public-health need: preserving rapidly diminishing hospital space for critically ill COVID-19 patients, *see* SAC ¶¶ 52-53, and discharging medically stable patients requiring nursing-home or assisted-living care to facilities better equipped to meet their needs.  Before and as of the beginning of the pandemic, both state and federal law required nursing-home facilities to have procedures in place to manage infections and provide patients with specialized and individualized care.  *See* 10 N.Y.C.R.R. pt. 415 (2013); 42 C.F.R. pt. 483 (2016).

The Court should reject the SAC's allegations that the GNYHA Defendants "ignored" "multiple viable alternatives" to the Advisories, SAC ¶ 81, and other "early compelling evidence" that nursing-home and assisted-living-facility residents were especially vulnerable to COVID, SAC ¶¶ 60, 99.  Under well-settled law, state actors that are "subjected to the pull of competing obligations," who must take action "in aid of competing public goals," *Lombardi*, 485 F.3d at 83, do not shock the conscience by choosing a course of action that bears some "real or substantial relation" to the public-health crisis before them, *Jacobson*, 197 U.S. at 31; *see also South Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring).

In *Estate of DeRosa v. Murphy*, the District of New Jersey dismissed Section 1983 claims challenging policies issued by New Jersey officials nearly identical to those at issue here.  2023 WL 3431218, at *5.[6]  As the court explained, "'[t]he mandates were implemented in the throes of

---

[6] New Jersey's adoption of a policy nearly identical to New York's is further proof that the Advisories were the product of the same "competing obligations" facing policy makers across the country.  *Lombardi*, 485 F.3d at 82-83.  In fact, as the SAC concedes, other states were also considering "adopting a similar approach" at the time, with the same goal of "free[ing] up hospital beds" for COVID patients.  SAC ¶ 63.

a rare, once-in-a-century global health crisis for which guidance has constantly evolved,'" and "government decision-making in the midst of a public-health crisis" is unchallengeable so long as it maintains some "real or substantial relation" to the crisis." *Id.* (quoting *Jacobson*, 197 U.S. at 28). Similarly, another judge in this Court recently applied similar principles to dismiss a challenge to nursing-home visitation restrictions during the pandemic, explaining that "[w]hen [state] officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *Mauro*, 2023 WL 2403482, at *6 (quoting *South Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring)). The SAC provides no basis to conclude otherwise here.

### D. The FNHRA Does Not Supply a Section 1983 Cause of Action Against the GNYHA Defendants, Who Do Not Operate Nursing Homes.

The SAC also alleges a Section 1983 violation based on Plaintiffs' federal statutory rights under the FNHRA. SAC ¶¶ 181, 190-204. But while the FNHRA can ground a Section-1983 cause of action against government-owned nursing homes, *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166, 192 (2023), it cannot ground a cause of action against the GNYHA Defendants. The FNHRA is expressly limited to the conduct of nursing-care facilities themselves. *See* 42 U.S.C. § 1396r(a)(1) (limiting application to "nursing facilities," defined as institutions which "primarily engage[] in providing to residents" nursing- or health-care related services). It confers no rights against GNYHA, a trade association that does not itself offer care services to patients. *See Talevski*, 599 U.S. at 185 (observing that the FNHRA's provisions "establish who it is that must respect and honor the[] statutory rights" that it confers, "namely, the Medicaid-participant nursing homes in which [potential plaintiffs] reside").

Section 1983 "cannot be used to alter the categories of persons potentially liable" under a statute. *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 448-49 (7th Cir. 2016) (dismissing Section 1983 claim where defendant did not fall into any categories of defendants authorized by underlying

20

statute); *see also Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011) (a Section 1983 "right of action can extend no further than the personal right conferred by the plain language of the statute" (quotation marks omitted)).  Because the FNHRA applies only to nursing-care facilities, Section 1983 does not grant Plaintiffs a FNHRA-based cause of action against the GNYHA defendants.  *See Talevski*, 599 U.S. at 180 (noting that FNHRA provisions "*can* create § 1983-enforceable rights," but only if they "*unambiguously* confer individual federal rights").  As a result, even if the GNYHA Defendants were plausibly alleged to be state actors and qualified immunity did not apply, the FNHRA cannot ground Plaintiffs' claim.

###### E.   The SAC Fails to Allege that the GNYHA Defendants' Conduct Proximately Caused the Harms Suffered by Plaintiffs.

All of Plaintiffs' Section 1983 claims additionally fail for lack of proximate causation. "Because a Section 1983 claim is a constitutional tort, the claims are 'guided by common-law principles of tort,' and a plaintiff must establish causation." *Soto v. City of New York*, 132 F. Supp. 3d 424, 443 (E.D.N.Y. 2015) (citation omitted).  Accordingly, to recover damages under Section 1983, plaintiffs "must prove that [their] injuries were proximately caused by the [alleged] violation." *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir.1994).  While "Section 1983 defendants are responsible for the natural consequence of their actions," they cannot be liable where "an intervening act is a 'superseding cause' that breaks the legal chain of proximate cause." *Wallace v. Suffolk Cnty. Police Dep't*, 809 F. Supp. 2d 73, 80 (E.D.N.Y. 2011) (cleaned up).  It is well-settled that a government official's "intervening exercise of independent judgment" is a "superseding cause that breaks the chain of proximate cause." *Id.* (quotation marks omitted); *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (same) (gathering cases).

*NCAA v. Tarkanian* is instructive.  In *Tarkanian*, the NCAA (a private party) recommended that a state university discipline its basketball coach.  488 U.S. 179, 186 (1988).  The university

disagreed with the recommendation but nonetheless enforced it, noting that the university itself faced serious sanctions from the NCAA if it did not comply. *Id.* at 187, 195-99. The Supreme Court dismissed the coach's Section 1983 suit against the NCAA, holding that it was not a state actor suable under the provision. *Id.* at 199. As the Court explained, "the final act challenged" was taken by the university, a state actor, when it chose to enforce the NCAA's recommendation, even under the prospect of heavy sanctions. *Id.* at 192. The NCAA had not "taken the decisive step that caused the harm to the plaintiff." *Id.* In *Townes*, the Second Circuit similarly recognized that a government official's "exercise of independent judgment" had "broke[n] the chain of causation for purposes of § 1983 liability." 176 F.3d at 147.

Here, the SAC alleges that the GNYHA Defendants encouraged, advocated for, and helped draft the Advisories on behalf of member hospitals. *E.g.*, SAC ¶¶ 52-53, 59, 110. But it does not and cannot allege that the GNYHA Defendants took the critical steps of enacting and enforcing the Advisories. Those steps were "ultimately the [government's] decision." *Omnipoint*, 233 F. Supp. 2d at 395. As such, the Advisories were the result of the government's "exercise of independent judgment," breaking any potential causal link between the GNYHA Defendants' advocacy and Plaintiffs' harm, even if the Advisories could ultimately be shown on the merits to have violated Plaintiffs' rights. *Townes*, 176 F.3d at 147.

Moreover, even putting aside the government's superseding decisions, Plaintiffs still fail to allege a causal connection between the Advisories and their harm. "Mere conjecture, surmise or speculation" cannot sustain allegations of proximate cause. *Fiederlein v. New York City Health & Hosps. Corp.*, 56 N.Y.2d 573, 574 (1982); *Pemberton v. City of New York*, No. 18 CIV. 7908, 2020 WL 4432095, at *3 (S.D.N.Y. July 31, 2020) (rejecting Section 1983 claim for lack of proximate causation). "[V]ague, generalized, and conclusory" gestures to proximate cause are

insufficient.  *Bellafaire v. Town of Wheatfield*, 401 F. Supp. 3d 405, 414-15 (W.D.N.Y. 2019).

The SAC makes only the most attenuated allegations regarding causation.  It alleges that 9,000 COVID-positive patients were admitted to New York nursing homes and assisted-living facilities while the Advisories were in effect, SAC ¶ 75; that over 15,000 nursing-home and assisted-living facility residents died from COVID after the Advisories were passed, SAC ¶ 76; and that the Advisories were "associated with a statistically significant increase in resident deaths," *id.*  The SAC does not, however, allege that the decedents' facilities admitted *anyone*—let alone anyone who was infectious—in the period following the issuance of each applicable Advisory and before they contracted COVID-19.  Nor does it allege that such admissions caused the decedents to contract COVID-19.  The SAC's failure to "allege how, when, or [from] where" the decedents might have contracted COVID-19 is fatal to its claims.  *Bellafaire*, 401 F. Supp. 3d at 415.

## II.     The SAC's Second Count, for Section 1983 Conspiracy, Fails for the Same Reasons.

The SAC separately fails to allege conspiracy under Section 1983.  *See* SAC ¶¶ 232-235.  Its terse and conclusory allegation of conspiracy is vastly insufficient.  *E.g.*, *Sommer*, 709 F.2d at 175 ("A complaint containing only conclusory, vague, or general allegations of conspiracy [under Section 1983] cannot withstand a motion to dismiss."); *see supra* Section I.A.1.  In any event, this claim also fails due to the lack of an underlying violation of Plaintiffs' federal rights.  *See supra* Section I.C; *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (dismissing Section 1983 claim for failure to allege violation of underlying right) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source.").

## III.    The SAC's Third Count Does Not Plead a Section 1985(3) Violation Because It Does Not Plead Discriminatory Animus, Conspiracy, or Violation of a Constitutional Right.

The SAC alleges a conspiracy to deprive Plaintiffs' rights and immunities in violation of Section 1985(3).  SAC ¶¶ 237-239.  But it fails to plead multiple essential elements of that claim.

First, a conspiracy under Section 1985(3) "must ... be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)); *accord Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). The SAC does not, and cannot, allege any race- or class-based animus behind its claimed conspiracies, on the part of the GNYHA Defendants or any other defendants. *See, e.g.*, SAC at 7, ¶ 51. This alone is grounds for dismissal of the claim.

Moreover, the SAC does not plead its Section 1985(3) claim beyond a conclusory "recital of [its] elements." *Iqbal*, 556 U.S. at 678; *see* SAC ¶¶ 237-239. Courts routinely dismiss Section 1985 claims where, as here, a plaintiff solely recites the elements of the claim while failing to substantiate, for example, an express or tacit agreement to achieve an unlawful end. *E.g.*, *Doe v. Fenchel*, 837 F. App'x 67, 68-69 (2d Cir. 2021); *Baa v. Gonzalez*, No. 22CV2602, 2023 WL 5278482, at *8 (E.D.N.Y. Aug. 16, 2023).

Finally, the SAC fails to even plead a deprivation of any constitutional right, as required under Section 1985(3). "Because 'Section 1985 provides no substantive rights itself,' a deprivation of the specified constitutional right is a required object" of Section 1985 liability. *Biehner v. City of New York*, No. 19-CV-9646, 2021 WL 878476, at *6 (S.D.N.Y. Mar. 9, 2021) (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)). But, for all the reasons discussed above, the SAC fails to allege a constitutional deprivation, let alone one that caused Plaintiffs' harm. *See supra* Sections I.C, I.E.

## IV. The SAC's Fourth Count Does Not Plead a Wrongful Death Claim Against the GNYHA Defendants, and in Any Event Fails to State Such a Claim.

The SAC brings its wrongful-death claim under New York Estate Powers & Trust Law § 5-4.1 against the New York Defendants only. SAC ¶ 241. Plaintiffs' wrongful-death claim has

not been brought against the GNYHA Defendants,[7] but if, in the alternative, it is construed to have done so, it must be dismissed.  First, it is time-barred because the claim against the GNYHA Defendants was not brought within two years of the decedents' deaths, and was not filed within the COVID-related tolling period for New York claims.  *See* N.Y. Est. Powers & Trust Law § 5-4.1; 9 N.Y.C.R.R. §§ 8.202.8, 8.202.67.  Second, it is doomed by the same deficiencies that require dismissal of Plaintiffs' Section 1983 claims.  *See, e.g.*, *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013).  Third, the SAC alleges no pecuniary loss by the surviving distributees of the decedents, an essential element of a wrongful-death claim under EPT § 5-41. *See Proano v. Gutman*, 211 A.D.3d 978, 982-83 (2d Dep't 2022).

## CONCLUSION

For the foregoing reasons, the GNYHA Defendants respectfully request that the Court dismiss the SAC against them in its entirety, and with prejudice.  After the GNYHA Defendants were added as defendants, Plaintiffs amended their complaint, and they have already had the benefit of two iterations of pre-motion letters explaining the core deficiencies in their complaints.  Moreover, no amount of factual elaboration will cure the fundamental legal shortcomings in Plaintiffs' claims against the GNYHA Defendants.  *See, e.g.*, *Bermudez v. Colgate-Palmolive Co.*, No. 21-CV-10988, ---F. Supp. 3d----, 2023 WL 2751044, at *16 (S.D.N.Y. Mar. 31, 2023) (dismissing complaint because "Plaintiffs already amended their complaint once… after having the benefit of Defendant's premotion letter," and because "further amendment would be futile").

Dated: November 17, 2023

Respectfully submitted:

/s/ Jeremy M. Creelan
Jeremy M. Creelan

---

[7] With respect to this and all other claims in the SAC, the GNYHA Defendants join the briefs of the other defendants to the extent they are applicable to the GNYHA Defendants.

Stephen L. Ascher
Elizabeth A. Edmondson
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
jcreelan@jenner.com
sascher@jenner.com
eedmondson@jenner.com
Tel: 212-891-1600
Fax: 212-891-1699

*Attorneys for Defendants Greater New York
Hospital Association and Kenneth Raske*